## CRAMER VS. STONE.

RES ADJUDICATA : (1, 2) *On second trial of cause.*
TAXATION. (3) *Biennial assessment in Milwaukee city.* (4, 5) *Boards of equalization and review in said city must act separately.* (6) *Notice of meeting of board of review; statute directory; defects cured.* (7) *Tax deed to city presumed regular.*

1. Upon the second trial of a cause, after a decision by this court on an appeal from a former judgment therein, the doctrine of *res adjudicata* applies to all questions on which the court was actually required to form an opinion and pronounce judgment on the former appeal.

2. Whether the general tax law of 1860 (ch. 386) superseded the amendments of the Milwaukee city charter made by ch. 172, P. & L. Laws of 1859, relating to a board of review, so far as city and ward taxes were concerned; and whether an *annual* assessment of real estate was necessary under the charter, or whether the city clerk had authority to construct a tax roll for 1862 by incorporating therein the assessment of real estate made in 1861,— are *res adjudicatæ* in this case, by virtue of the former decision therein. *Cramer v. Stone*, 33 Wis., 212.

3. This court is still of opinion that the charter of Milwaukee, as amended in 1859, contemplates only a *biennial* assessment of real property in pursuance of the general law of 1859, as revised and reenacted in 1860. (Sec. 18, ch. 386, Laws of 1860.)

[4. Where a particular power or duty is delegated to a select body, it must be exercised or performed by that body; and if others, who have no right to act, join in its performance, the act will be void.]

5. The taxes for city purposes levied in Milwaukee in 1862 were required by law to be equalized by a "board of review" created by ch. 172, P. & L. Laws of 1859; while the assessment rolls for county and state taxation in the same city were required to be corrected and equalized by a "board of equalization" created by sec. 22, ch. 386 of 1860. (33 Wis., 212.) The two boards were largely composed of the same officers; and they met at the same time and place, and participated in the same consultations and discussions; but, when they came to act, each board voted by itself, each acting finally upon the matters committed to it by law. *Held*, that their action was valid.

6. Where notice of the meeting of the boards of review and equalization, for examination and correction of the assessment rolls, was required by law to be given *ten days* before the time of such meeting, the notice, first published June 4th, stated that the meeting would be held on the 13th of that month, and that the lists for the several wards of

the city would be open for examination on certain specified days, the day named for the examination of the list for the ward in which the property here in question was situate, being the 20th of said month. *Held*, that the notice for said ward was sufficient; and, if otherwise, a clause in said charter which provides that no error or informality in the tax proceedings, not affecting the substantial justice of the tax, should vitiate the tax, would cure the irregularity.

7. A tax deed running to the city, in the form prescribed by sec. 50, ch. 22, Laws of 1859, recites that the amount of delinquent taxes, costs, charges, etc., "has been paid by the aforesaid purchaser," i. e., the city. *Held*, that notwithstanding these words, it will be *presumed* that the land was merely bid in by the city *in default of other bidders* — that being the only contingency in which the city had authority to make the purchase. 28 Wis., 312.

APPEAL from the County Court of *Milwaukee* County.

Ejectment, for lands in the city of Milwaukee. The plaintiff claimed under a tax deed in the ordinary form, which recited, among other things, that the premises were, on the 30th of January, 1860, sold to the city of Milwaukee for a certain sum, being the amount of taxes and charges against it at the time of sale, the whole of which sum had been "paid by the aforesaid purchaser." A former trial of the action will be found reported in 33 Wis., 212. A judgment for the plaintiff having been there affirmed, the defendant took a new trial, within one year, under the statute.

The testimony developed upon the second trial was substantially the same as stated in the former report, but, in addition to the facts there disclosed, it appeared that "the city board of equalization" (comprising the mayor, city clerk, treasurer and assessors, of the city of Milwaukee, upon whom devolved the duty of correcting and equalizing the assessment rolls of the city for purposes of state and county taxation), and the "city board of review" (comprising the same officers excepting the city clerk, and in addition the comptroller and city attorney, whose duty it was to equalize the taxes levied for city purposes), met at the same time and place, and participated in the same discussions, and consulted together; and that they certi-

fied but one assessment roll, there being no disagreement between them ; but that in the matter of voting each acted separately, the roll of each board being called by itself.

There was also an objection taken to the sufficiency of the notice of the meeting of one of the boards, the ground of which appears in the opinion.

A verdict was directed for the plaintiff, and judgment entered thereon, from which the defendant appealed.

*Smith & Stark* and *Johnson & Reilbrock*, for appellant, contended, among other things, 1. That the city could become a purchaser at the tax sale only upon the contingency expressed in the statute (sec. 16, ch. 8 of the city charter of 1852), viz., where no bid was made by others; and the deed, reciting a payment of money by it as an ordinary purchaser, was invalid. *Knox v. Peterson*, 20 Wis., 247 ; *Sprague v. Coenen*, 30 id., 209. 2. That the city charter required annual assessments, and, as the court held on the former appeal in this case that the provisions of the charter and its amendments were not abrogated by the general law of 1860, the assessment roll of 1861 was incompetent evidence. 3. That there appeared to have been but one equalization, and that not by any official body known to the law, but by the two boards acting together, which was illegal. Willcock on Corp., 68, pl. 128 ; *Rex v. Croke*, 1 Cowp., 26 ; 12 Law Lib., p. 37 ; *Raleigh v. Sorrell*, 1 Jones' Law (N. C.), 49 ; *Rex v. Head*, 4 Burr., 2521 ; Dillon on Mun. Corp., §§ 211–214. 4. That the assessment roll was invalid for the reason that only nine days' notice was given of the meeting of the assessors to correct their lists, while the statute required ten. Sec. 9, ch. 172, Laws of 1859.

*J. J. Orton*, for respondent, argued, 1. That as to the objection that the city had purchased for cash, the deed showed simply that the land was *sold* to the city, and the presumption would be that it was sold in conformity to law for want of bidders. *Prentz v. Klotsch*, 28 Wis., 313–17 ; 22 id., 429 ; *Coleman v. Hart*, 37 id., 180 ; *Geekie v. Wells*, id., 362. 2. That as

to other points of the appellant, any irregularities in notices were cured by sec. 19, ch. 8 of the charter of 1852; the board of equalization had merely met and affirmed what was done by the board of review, without changing anything; none of the errors alleged appeared to have worked any injury to the appellant; and moreover all were *res adjudicatæ*, and could not be further considered. *Wright v. Sperry*, 25 Wis., 617; *Ward v. Price*, 1 Pin., 101; 29 Wis., 43.

COLE, J. All the material questions in this case were presented to the court on the former appeal, either in the first argument, or in the arguments on the motion for a rehearing, and, if not expressly, were by implication decided. The question whether the general law of 1860 (ch. 386) was intended to supersede and abrogate all the provisions of the amendment to the charter of Milwaukee made by ch. 172, P. & L. Laws of 1859, relating to a board of review, so far as city and ward taxes were concerned, was considered and determined. The objection that the city clerk had no right or authority to construct a tax roll for 1862 by incorporating into the roll for that year the assessment of real estate made in 1861, was taken on the former appeal, and overruled. It was then claimed that the city clerk could only copy the roll of 1862 as returned to and confirmed by the common council, and, if the roll failed to embrace the real estate, he had no power to supply it. It was also then understood that the assessment of real estate upon which the general tax in question was based, was made in 1861, and that the assessment for that year, as confirmed by the common council, was adopted in the roll of 1862, with the addition of omitted lots and corrections in regard to improvements newly constructed or destroyed, and was made the basis of city taxation. These matters were certainly before the court on the former appeal, and we did not then consider that an annual assessment of the real estate was necessary or contemplated by the charter. Nor do we now think that such annual

assessment was required or contemplated. The amendment to the charter (sec. 8, ch. 172, P. & L. Laws of 1859) directs and requires the ward assessors to make a true valuation of each lot and part of a lot within their respective wards, with the buildings thereon, " *in the manner directed by the laws of this state.*" The general law of 1859 (ch. 167, sec. 18) — and as revised and reenacted in 1860 (ch. 386, sec. 18), — made it the duty of the assessors elected in 1859, and every second year thereafter, to list and value for taxation all the taxable real property within their respective districts. The amendment of the charter refers to and adopts this general provision in regard to biennial assessment of real estate, and the taxing officers of the city followed it, supposing it to be applicable. Consequently the real estate was not assessed in 1862, but the assessment of the previous year was incorporated into the roll by the city clerk, as before remarked. Now, the learned counsel for the defendant argue and insist that the general law governs only as to the mode of making the valuation, or the method of proceeding to get at the description and true value of the property, but that it does not control as to time. And they further claim that the city charter requires both real and personal property to be listed and valued each year; and they say that biennial assessments had no place in the city system. We have quoted the language of the charter bearing upon this point; and it seems to us it utterly fails to sustain the position of counsel. But as this question was necessarily involved in the former decision, we do not feel called upon to consider it further. For the doctrine of *res adjudicata* applies to the questions upon which the court was actually required to form an opinion and pronounce judgment.

The counsel furthermore contend that new facts were shown on the second trial respecting the course pursued in equalizing the assessment roll in 1862, from which it appears that such roll was not equalized by any official body known either to the charter or to the general law of 1860. We do not so un-

derstand the testimony. The evidence is entirely clear, that while the board of equalization and board of review met at the same time and place, and were organized, and perhaps participated in the same consultations and discussions, yet, when they came to act, each board voted by itself. The two boards were composed of very nearly the same officers; and if the boards in their action voted separately and acted finally upon the assessment roll as distinct boards, we cannot perceive any valid objection to the equalization. The case is not analogous to the one instanced on the argument. Where a particular power or duty is delegated to a select body, that body must perform the duty or exercise the power, and if others, who have no right to act, join in its performance, the act will be void. Here no person acted finally with the board of review who was not authorized to act upon such board; and the same is true in respect to the action of the board of equalization. In each case the assessment roll was equalized by the body to which the power was delegated; and the fact that both bodies acted separately upon it would not invalidate the action of the proper body.

It is also objected that legal notice of the meeting of the assessors to correct their lists was not given, and for that reason the assessment roll of 1861 was invalid. The law required notice to be given by publication ten days before the time of meeting (sec. 9, ch. 172, P. & L. Laws of 1859); and the first publication of notice to correct the lists for the different wards was made on the 4th of June, 1861, to commence with the list for the first ward on the 13th of the same month, and for the examination of the list for the seventh ward, where the premises in question are situated, on the 20th of the month. I am strongly inclined to think the provision in regard to giving this notice is directory merely. But however this may be, the notice for the seventh ward was ample; and besides, there is a clause in the charter which provides that no error or informality in the tax proceedings, not affecting the substantial justice

of the tax itself, shall vitiate the tax. Sec. 19, ch. 8, charter of 1852. This provision would cure the alleged informality in giving the notice for the meeting of the assessors to correct the list.

The objection that it appears on the face of the tax deed that the land was purchased by the city with money, and that it was not struck off to the city in default of bidders at the sale, is equally untenable.. The tax deed is in the form prescribed by the law of 1859 (ch. 22, sec. 50). And, following that form, the deed recites that the amount of delinquent taxes, costs, charges, etc., "has been paid by the aforesaid purchaser," which was the city. Notwithstanding these words in the tax deed, the presumption must be that the land was bid in by the city in default of bidders. *Frentz v. Klotsch*, 28 Wis., 312. In that contingency the city was authorized to bid it in at the tax sale.

This disposes of all questions we deem it necessary to notice.

*By the Court.* — The judgment of the county court is affirmed.

RYAN, C. J., took no part in the decision of this cause.