THE STATE ex rel. SMITH vs. COOPER, Town Clerk, etc.

*February 4 — February 19, 1884.*

TAXATION: ASSESSMENT: WAIVER. *(1) Voluntary appearance before board of review a waiver of irregularities in meeting. (2) Relief against improper assessment.*

1. A party who appears at the meeting of a board of review, objecting to the legality of the meeting on the ground that it is not held at the proper place or on proper notice, and yet submits voluntarily to the board, offering evidence and asking for a decision in his favor on the merits, waives by his subsequent action the objections taken.
2. A party asking for relief from an improper assessment in view of taxation, must show equity in his behalf, and not attempt to evade just taxation.

APPEAL from the Circuit Court for *Milwaukee* County.

Upon the affidavit of the relator a writ of *certiorari* was issued out of the circuit court commanding the town clerk

to certify to said court the proceedings of the board of review of the town of Greenfield, in raising the relator's personal property assessment.

The affidavit stated, among other things, that the adjourned meeting of the board, at which the assessment was raised, was not held at the place prescribed by law and that no legal notice of the adjournment had been posted; that the relator appeared specially at such meeting and protested against any action relative to the assessment, on the ground that the meeting was illegal for the reasons above stated; that, the objection having been overruled, the board proceeded to consider a list of mortgages held by the relator and not included in his personal property assessment, and proposed to raise the assessment the entire amount of the aggregate of such mortgages; that the relator presented and filed the affidavit of Thomas W. Smith, his son, stating that he had carefully inspected the relator's books of account and found from said books that the relator was indebted to sundry persons in sums aggregating about $30,000, and that above three fourths of said indebtedness had existed and drawn interest for more than one year past; that the relator further offered to prove to said board by competent evidence that he was then, and at the time of the assessment had been, owing *bona fide* and unconditional debts to persons residing outside of the town of Greenfield, the aggregate of which more than offset the additional amount upon which the board proposed to assess him; that the board refused to receive any such testimony or allow any such offset unless the relator would also furnish said board a list of all persons to whom he owed money and who resided in said town of Greenfield; that the relator, believing that said board had no authority to impose conditions upon which they would accord to him his legal rights, refused to comply with such demand, and the board thereupon refused to receive any evidence respecting such unconditional and *bona fide* debts of

the relator, or to offset the same or any part thereof against the moneys owing to relator by way of mortgage, upon which they proposed to raise his assessment; that the board then and there proceeded to and did add to the personal property of the relator upon the assessment roll the sum of $5,475; that such increase was wholly based on moneys owing to the relator, and that he has not in any way, directly or indirectly, been allowed the benefit of the offset allowed by subd. 10, sec. 1038, R. S.; that the relator is owing unconditional, *bona fide* debts to persons outside of said town of Greenfield to an amount more than sufficient to offset his increased assessment, and that his offer of evidence to prove that fact was made in good faith, and that he is ready and willing at all times to produce such evidence as may be required.

The return of the town clerk, after alleging facts relative to the place of meeting of the board and the notice of adjournment, sets forth, among other things, what is stated to be an accurate record of the proceedings of the board at the adjourned meeting. This record, in the form of minutes of the meeting, states that, after completing the review of the assessment roll and taking the affidavits of certain parties concerning their personal property, the board decided to make certain alterations, and, among other things, " the assessment of *James Smith*, on personal property, was raised from $1,695 to $7,170, the said *James Smith* having previously filed a remonstrance, denying that the board had a legal right to assess his property, on the grounds, as he claimed, of its being an illegal meeting, also an affidavit of Thomas W. Smith, stating the indebtedness of the said *James Smith* (which may be seen on file in the town clerk's office), and he further offered to produce a list of his creditors, and the amount due each such creditor, to the clerk of the board of review, or to any member thereof, providing that he did not publicly disclose the same, or use them to the detriment

of his creditors; and he further offered to produce his books, and show and explain his interest therein, and to show to any member of the board of review, a list of his creditors, provided that such amount shall not be assessed against such creditors for the current year; and he further offered to produce a list of such creditors, who are nonresidents of the assessment district, and to furnish proof of each and every offset claimed, and that the board of review refused to accept a list of nonresident creditors of the assessment district, unless they received a list of the resident creditors also; and the said *James Smith* further offered to produce affidavits of such creditors, showing the amount which the said *James Smith* is owing to them, and such amounts owing by him are *bona fide* debts, if time be given to him not to exceed ten days, but the said *James Smith* absolutely refused to disclose the names of his creditors residing in the assessment district, only under promise from the members of the board of review that the same should not be used to the detriment of his creditors; and he further claimed that the amount owing by him to nonresident creditors more than offset the amount which the board of review proposed to assess him with. The meeting then adjourned *sine die.*"

The return further states that at said adjourned meeting the board had before it a certain list of mortgages, found of record, amounting to about $30,000, and the assessment roll and valuations of the town, from which it appeared that the relator was assessed for personal property to the amount of $1,695; also a statement filled out, but refused to be sworn to, by the relator, showing personal property to the amount of $1,695; and that the relator also filed at the time of said meeting a statement, verified by his oath, of mortgages held by him, amounting to $6,475.

The return further states that the board "carefully reviewed and examined said assessment roll and statement, and the valuation of real and personal property, and for the pur-

pose of correcting errors said board heard, amongst other interested parties, said relator, who then and there appeared before them, and proposed to examine him upon oath in relation to the assesment of his property upon said roll, and in relation to property omitted therein; but said relator refused to take an oath or affirmation and to testify in relation thereto, or any matter appertaining to said matter of inquiry, unless upon conditions which the board of review considered to be unlawful and contrary to conscience and public policy. And the board, being satisfied from the evidence before them that the assessor's valuation of personal property, assessed to said relator, was too low, and that a large amount of personal property was omitted therefrom, which in right should be assessed to *James Smith*, the relator herein, and having accorded to him a full hearing in relation thereto, upon the evidence adduced as aforesaid the board did duly adjudge that said assessor's valuation ought to be, in justice and equity, increased from $1,695 to $7,170, and the same was then and there done accordingly."

A motion by the defendant to quash the writ, upon the record, was denied, the circuit court holding that the board of review erred in making it a condition of the acceptance of the proof offered of debts owing by the relator to nonresident creditors that the relator should disclose the resident creditors; that an offset by an indebtedness to nonresidents was as legal as one by an indebtedness to residents, and if the former were established it would be entirely unnecessary to establish the latter by a disclosure of creditors within the assessment district. An opinion was filed by the circuit judge, in the course of which, after citing sec. 1061, R. S., it is said:

" The board acts quasi-judicially in hearing the objections and proofs to sustain them, and, while it is held its decision upon the proofs is to be upheld where the board hears them, it is not held that it can refuse to hear the proofs or impose

any condition subject to which it will hear them. That would practically render this section of the statute, as far as it relates to a hearing of objections to an assessment, a nullity. The relator was in this instance, as in all judicial proceedings, entitled to a hearing of his proofs and to the judgment or judicial action of the board upon them. The object of the statute is to prevent an unjust assessment, and where it appears that the assessed claims that an assessment is unjust and offers to prove it, and is denied that right, to presume that the assessment is not unjust requires that it shall be presumed his unheard evidence would not have established the offset. This might perhaps be done if it appeared that there was other property subject to taxation, of the assessed, equivalent to the amount objected to, omitted by the as-sessors. It cannot be said that it does so appear, as the $30,000 of mortgages omitted was evidently conceded not to be subject to taxation as the property of the relator, or, if it was, that he had legitimate offsets against them.

"The addition of omitted subjects of taxation by the board of review and the subsequent proceedings for objection thereto, have very much the appearance of a new assessment *pro tanto*, and the error complained of in this case, it would seem, went to the ground-work of the tax.

"The court is therefore of the opinion that the board erred in declining to receive the proofs of the nonresident indebtedness unconditionally, and that such action vitiated the assessment as to the amount added by the board to the original assessment, and that the motion to quash the writ must be denied."

The defendant thereupon made a motion to the effect "that he will be able, by proper evidence and on further hearing, to show that the relator was not prejudiced by the proceedings before the town board, and that injustice has not been done on such review, and therefore prays that the court order such proofs to be taken, either by reference or

otherwise, as either party may offer in that behalf, and for such other and further relief as may be proper and equitable."

The motion was denied, and judgment was duly entered reversing and vacating the action of the board of review in raising the relator's assessment from $1,695 to $7,170. The defendant appealed.

For the appellant there was a brief by *Cotzhausen, Sylvester, Scheiber & Jones,* and oral argument by *Mr. Cotzhausen.* They argued, among other things: 1. The pretended list of nonresident creditors was never tendered in fact, and consequently it cannot be told whether it would have tended legally to establish what was claimed for it as an offset. 2. A *list* of creditors is not *legal* evidence of *bona fide* and unconditional debts. 3. It is not pretended that such list would have shown or established, in any event, indebtedness equal to the whole amount of mortgages outstanding in relator's name. 4. The fact still remains evident from the record that such offer to make out a list of nonresident creditors was coupled with the condition that a personal examination on oath be abstained from, thus depriving the board from finding the facts upon all the evidence, and doing away with cross-examination altogether. 5. It is a violent presumption, not warranted by anything in the record, that the board's proposition to increase the assessment was limited and confined to the mortgages which the relator admitted he held. 6. The conflicting statements of the relator as to the nature and extent of his taxable property, warranted the board in disregarding his evidence altogether and assessing him as in their judgment would be just and proper. 7. The addition of $5,475 to the amount previously returned, while nearly $30,000 of mortgages stood in his name unsatisfied of record, cannot be said to be an injustice, even if the indebtedness to nonresident creditors aggregated somewhat more than the amount added.

8. The relator does not come into court with clean hands and good conscience. He is found prevaricating all through the proceedings, laboring to cover up taxable property held by himself in his own right and for others. Equity will not relieve him. 9. The relator does not even now pretend that the aggregate valuation upon which he is assessed exceeds the gross sum on which *in justice and equity he ought to pay*. He complains of "illegal acts" and an "illegal assessment," but nowhere is there an assertion of "over-taxation."

*Hugh Ryan*, for the respondent, contended, *inter alia*, that the relator made two distinct offers of proof before the board. The first, being conditional, was properly rejected. But the second was an unconditional offer to furnish a list of creditors who resided outside of the town of Greenfield, to whom he owed unconditional and *bona fide* debts, and " to furnish proof of each and every offset claimed," alleging that the amount so owing by him to such nonresident creditors was more than sufficient to offset the proposed increase on his assessment. This evidence should have been received. If the offset claimed, in fact existed, the relator was by law, not by the grace of the board, entitled to it, without regard to the residence of the creditors. If he was in possession of information to which the board had a right, regarding credits owned by and not assessed to tax-payers in the town of Greenfield, the board had ample legitimate power to compel the disclosure of such information. But they had no legal power and no equitable right to make such disclosure the price at which they would accord the relator his right to prove the offset claimed by him, or to make the denial of his rights the penalty of his refusal to furnish the required information. It is not true that the relator has made conflicting statements as to the nature and extent of his taxable property, or that he does not come into court with clean hands. He has not prevaricated, nor has he labored to cover up his taxable property. He does not

admit the list of mortgages, aggregating about $30,000, claimed to have been found on the records, nor does the board appear to have found it correct. The relator did acknowledge owning mortgages to the amount of $6,475, but claimed an offset against them. This offset the board did not permit him to prove, and so they added to his assessment that amount, less the $1,000 of such mortgages already assessed to him.

ORTON, J. This is a common law *certiorari* from the circuit court for Milwaukee county, directed to the clerk of the town of Greenfield, in said county, to return to said court the record and proceedings of the board of review of assessments of said town, and to reverse the determination of said board increasing the assessment of the property of the · relator, *James Smith.*

The return shows the following facts and proceedings: The relator appeared and was present at the meeting of the board, and voluntarily presented a list of mortgage securities belonging to him in said town, in addition to the property listed by him to the assessor, to the amount of $6,475, and which increased the assessment of the assessor to that amount. By this act he submitted to the jurisdiction of said board, and waived all pretended irregularities in their meeting. We shall, therefore, not consider any such objections, which he pretended to reserve on such appearance, and which he urges in this court. An appearance simply and solely to protest against the jurisdiction of the court is not such an appearance as waives such questions, but an appearance protesting and yet submitting voluntarily to such tribunal on the merits of the case, and presenting evidence and asking for a judgment of such tribunal in his favor on the merits of the controversy, is a waiver thereof. This is an elementary rule, which requires no citation of authority. We shall therefore dispose of the case on the return.

The relator had made out the usual statement of his taxable property, with his deductions from his taxable credits of his debts, according to sec. 1056, R. S., and returned the same to the assessor of said town. The entire value of his taxable property, as so made out and returned by him, was the sum of $1,695. In this statement was included the average amount of his notes, bonds, mortgages, and other securities for debts due or to become due, *over and above* the average amount of the *bona fide* unconditional debts owing by him, at the sum of $1,000. This statement was not verified as the law requires, but it was nevertheless the voluntary statement of the relator, by which he is bound and estopped as much as if it had been verified. After presenting to the board said verified statement of mortgage securities not included in the statement to the assessor, the relator claimed orally that he was entitled to a much greater deduction than appeared upon his statement to the assessor. The knowledge of such debts of the taxpayer is not presumed to be in the board of review, but in the tax-payer himself, and after the relator had presented his additional list of property liable to taxation, consisting of such credits, he held the affirmative, and it was his duty to present the evidence thereof to the board. He presented no competent or sufficient evidence of such debts, and, besides that, he refused to be sworn and examined in relation thereto on the request of the board. The *ex parte* affidavit of Thomas W. Smith was no evidence at all of such fact, for he does not pretend that he personally knew anything about it. The relator not having presented any proof of any of his indebtedness over and above that for which he was allowed on his statement to the assessor, the board could do nothing less than to add to his assessment the additional amount so made out under his oath, voluntarily and unconditionally, and presented to them, and such was their final determination. This is really all of the record, or that

legitimately belonged to the record.    The other facts returned by the clerk consisted of a mere *colloquy* between the relator and the board, but therein there cannot be found any offer upon the part of the relator to present any competent or sufficient proof or evidence of any more of his debts which ought to have beeen deducted from his credits than appeared upon his statement to the assessor.    The board were necessarily left to make a mere computation and add, as they did, to the $1,695 returned by him to the assessor the additional amount of $6,475, which he so voluntarily and unconditionally admitted to the board, ought to be so added by his own verified statement thereof presented to them by him.

The colloquy above referred to was substantially as follows: The assessor had consulted the register's books of the county as to the mortgages owned and held by the relator at the time he made the assessment, and found that an additional amount of credits ought to have been assessed to the relator, in nearly, or about, the sum of $30,000.    This list, made out by the assessor, but not as a part of his return of assessments, became the subject of conversation between the relator and the board.    Thereupon the relator was requested by the board to present a list of his debts, which he claimed ought to be deducted from his credits, and to be sworn and examined in relation thereto.    As to such debts as he owed to persons within that town he offered to present such a list, if the board would pledge themselves to keep the same secret, so that they might not be taxed.    As to such debts as he owed to persons outside of said town, he offered to procure the affidavit of each one of his said creditors, and present them to the board, if they would give time for the space of ten days in which to do so.    These propositions were, of course, rejected by the board, and this was the end of the matter.    The $30,000 of mortgages found by the assessor upon the books of the county register was not added

to the assessment, as probably ought to have been done, but the relator ought not to complain of that, at least. It will be seen by this that the case of the relator presents not a single redeeming feature of justice, moral merit, or equity. He virtually admitted that he had made an erroneous return of his property to the assessor, by his sworn-to statement made to the board, and his refusal to be sworn and to be examined, or to present even a verified statement in respect to his debts, by the apparent fear that they might be taxed to himself or others as the owners or holders thereof, and his unseemly propositions to the board conditional upon their violation of duty, most emphatically condemn his case in a court of equity. Besides this, it did not, and does not, appear that his assessment finally made was unfair or unjust or inequitable to him in any particular, but the impression is almost irresistible that he was not assessed as much as he should have been.

The relator is asking relief from an improper assessment in view of taxation. In such a case he must show equity in his behalf, and not attempt to evade just taxation. *Knapp v. Heller*, 32 Wis., 469; *Wilson v. Heller*, id., 457; *State ex rel. Town of Manitowoc v. County Clerk, ante*, p. 15; *Warner v. Knox*, 50 Wis., 436. The language of the present chief justice, in *Steele v. Dunham*, 26 Wis., 393, in a similar case, is most appropriate in this: "The duties which these officers are called upon to perform are frequently most difficult, delicate, and embarrassing. The public interests require that all property not exempt should be assessed at its true value for taxation. But many persons will resort to any expedient to prevent all their taxable property from being assessed, or, if assessed at all, from being assessed at its true valuation. They will deceive assessors, and intimidate and overawe boards of equalization, if possible," etc.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with direction to affirm the determination of the board of review.