THE STATE EX REL. SMITH, Appellant, vs. GAYLORD, Village Clerk, etc., Respondent.

*January 8 — January 29, 1889.*

*Taxation: Board of review: Jurisdiction: Waiver of notice of meeting: Certiorari: Review of evidence: Raising valuation of securities: Tax-payer's statement not conclusive.*

1. The fact that proper notice was not given of a meeting of the board of review does not affect its jurisdiction to hear and decide cases in which the parties interested are present and are fully heard without making any objection on the ground that the legal notice was not given.
2. The courts will not, on *certiorari*, examine and weigh the evidence upon which the board of review acted in raising valuations, if there was competent evidence before it to warrant its decision.
3. Under sec. 1061, R. S., the board of review has power, upon evidence taken before it, to raise or lower the valuation of any property on the assessment roll, including securities or credits as to which the tax-payer has made the statement required by sec. 1056.

APPEAL from the Circuit Court for *Walworth* County. The case is stated in the opinion.

For the appellant there were briefs signed by the relator in person and by *J. F. Lyon & Son*, of counsel, and the cause was argued orally by *J. F. Lyon* and *Jay F. Lyon*. 1. The board of review, on June 26, 1888, adjourned for more than one day, and no written notice thereof was posted on the outer door of the village clerk's office, stating to what time said meeting was adjourned, as required by ch. 74, Laws of 1881, amending sec. 1060, R. S. 2. The action of the board of review is not supported by the evidence. 3. The relator's statement under oath, having been duly made pursuant to the statute, conclusively determines the valuation and amount of his personal property for which the assessment should be made. *State ex rel. Ward v. Assessors*, 1 Wis. 345; *Matheson v. Mazomanie*, 20 id. 191; *White v. Appleton*, 22 id. 639; *Ketchum v. Mukwa*, 24 id.

303; *Wauwatosa v. Gunyon*, 25 id. 271; *Phillips v. Stevens Point*, id. 594; *Lawrence v. Janesville*, 46 id. 364. By sec. 1061, R. S., it is made the duty of the board of review to review and correct errors made by the assessor. They are also expressly authorized to raise or lower valuations *made by the assessor* — but not any other valuations. They are directly commanded by sec. 1056 to make the assessment of " item 15 " for the amount as determined by the tax-payer's sworn statement.

For the respondent there was a brief by *Dodge & Fish*, and oral argument by *J. E. Dodge.*

ORTON, J. This is a writ of *certiorari* to the respondent, as clerk of the village of Elkhorn, to bring before the court the proceedings of the board of review of said village in respect to the assessment of the personal property of the relator for the year 1888. The facts appearing from the petition and return are as follows:

The relator made out the usual verified statement of his taxable personal property for that year, by entering in the column headed "Valuation by owner," "Gold and silver watches, 1 in number, $50; " "Average amount of moneys in possession or on deposit during year, $200; " "Average amount of notes, bonds, mortgages and other securities for debts due, or to become due, for each and every month during the year ending May 1st, over and above the average amount of *bona fide* unconditional debts owing for each and every of said months, as determined under sec. 1056, R. S., $3,000; " "All other personal property not including above and not exempt, $300; " "Total value of all personal property, $3,500,"— and returned said statement so made out to George W. Wylie, the assessor of said district. The assessor entered in said statement, in the column headed "Valuation by assessor," opposite the $3,000 for notes, bonds, mortgages, etc., which in said statement is marked

" Item No. 15," $5,300, against the protest of the relator. The relator appeared before the board of review on the 25th day of June, 1888, and presented written objections against such increase of his assessment by the assessor, and asked that it be made in pursuance of his statement, on the ground that such statement was conclusive upon the assessor and upon the board of review; and appointed J. F. Lyon, Esq., to appear for him before said board in the matter. The board of review, upon the relator's said objections, and on the ground that said sworn statement was binding upon the assessor, restored the valuation of said item No. 15 to the amount fixed by the relator. At the same time the said George W. Wylie claimed before the board that said item was assessed too low, according to said statement of the relator, and that it ought to be raised and increased to be a fair and equal valuation thereof, and offered to prove the same before the board. Thereupon said Wylie was duly sworn, and testified as a witness before the board in respect to such valuation, and was interrogated in respect thereto, against the repeated objection of the relator; and testified, substantially, that he had examined the records of Walworth county, and found thereon mortgages to the relator from several persons in the aggregate of $5,300, and that the relator told him that there had been nothing paid on said mortgages; that he asked the relator if he owed any debts, and he said he owed some debts when he left the state of New York forty years ago; and, when asked by the board if the relator made a statement of any debts the year before, the witness answered that he did not. Thereupon the board demanded of the relator that he be sworn and testify as to the value of his personal property, and he refused so to do, insisting that his said statement was conclusive as to the value of the property, as item No. 15. Thereupon the said attorney of the relator (the relator himself being present) was heard upon the question of the

valuation of item No. 15, and presented to the board a brief thereon. The matter was then laid over for consideration, with the understanding that said J. F. Lyon, Esq., the attorney of the relator, should be notified of the taking of further testimony, and the board adjourned to 9:30 A. M. of the following day, June 26, 1888. At that time said attorney of the relator was further heard on the question, and requested the board to adjourn to some future time for further consideration thereof, and the board did adjourn to 9 o'clock A. M. of July 6, 1888, with the knowledge of said attorney. Notices of said adjournment were posted in three of the public places in said village. On said day the board again met, the said attorney being present, and had an opportunity and was requested to offer further testimony and to be further heard on the question, but he declined so to do. The board remained in session the whole day for such purpose, and late in the day decided to raise the valuation of item No. 15 in said statement to $5,300, and fixed the same at that amount.

On this record the circuit court affirmed the decision of the board of review.

I have been thus particular in stating the facts appearing of record, for a proper understanding of the first two points made by the learned counsel of the appellant: (1) That the notices required by the statute were not given of the meetings of the board; and (2) that the action of the board was not supported by evidence.

1. As to the first point, it may be said, in brief, that inasmuch as the statute has imposed the duty of posting the notices upon the clerk, and not upon the board, and the board are required to meet for a review of the assessments as a public and imperative duty, any neglect of the clerk in such particular would not affect the legality of their meeting for such purpose, or their jurisdiction to hear and decide cases in which parties interested have had act-

ual notice, or submit their assessments to a review by the board by consent. Sec. 1060, R. S. The only object of such notices is to apprise those interested of the time and place of the meetings of the board, so that they may be heard touching their own assessment. That others or all of those assessed besides himself have not had due notice is immaterial to him, if he has had actual notice, and appeared, and contested the raising of the valuation of his personal property as item No. 15, and been fully heard in the matter. All the rights in the law he had, he has exercised and enjoyed, and he has no right to complain, on behalf of others, that they had no notice. These are elementary propositions. But in this case the appellant waived constructive notice by being all the time present and participating in the proceedings, and by being heard fully in the matter, without any objection or reservation on account of a want of the proper legal notices, or of any other irregularity. The meetings of the board were held and the arguments made at his request or with his full knowledge. But the question has been substantially so decided by this court. *Cramer v. Stone*, 38 Wis. 259; *McIntyre v. White Creek*, 43 Wis. 620; *State ex rel. Smith v. Cooper*, 59 Wis. 666. The board, therefore, had jurisdiction, and that is the main question on the writ of *certiorari*.

2. In such a case, we may not examine and weigh the testimony as to its preponderance, if there was competent evidence before the board to warrant the decision. *State ex rel. Moreland v. Whitford*, 54 Wis. 150; *Persons v. Burdick*, 6 Wis. 63; *Dexter v. Cole*, 6 Wis. 319; *State ex rel. Smith v. Cooper, supra*. The assessor and witness Wylie found mortgages of record to the relator of the amount stated, of $5,300. The relator was informed of that fact, and asked if anything had been paid thereon, and he said there had not, and tacitly admitted that he owned and held the same; and he was asked to be sworn and to testify on the subject,

and he refused. This evidence is very nearly conclusive that he owned these securities. As to a deduction of his debts, if he had any, he was asked, and stated that he "left some debts in New York forty years ago." That is all he said about it. He did not claim that he owed any debts whatever during the year 1888, and the year before he claimed to owe no debts to be deducted from his assessments. This evidence was quite sufficient to justify the action of the board.

3. The main question presented is whether the sworn statement of the relator was conclusive upon the board of review, as to the item No. 15, of notes, bonds, mortgages, etc. Such statement may be conclusive, so far as the assessor is concerned, by force of the language at the end of sec. 1056, R. S.: "And the average amount of such year, so determined [by the sworn statement], shall be *assessed* for taxation." But that question is not in the case, for the board ignored the action of the assessor in raising item No. 15 to $5,300, and set the amount back to $3,000, as fixed in the statement, and predicated their action upon the statement alone. If this action of the board and this construction of the law were erroneous, the relator was not injured by it, and has no right to complain. Whether the statement was conclusive upon the board of review is another and different question. If the assessor is bound to take the statement as to item No. 15, and adopt its valuation as his own, he is certainly required to so enter it upon the assessment roll; for his assessment roll must be complete, and as such passes before the board of review and the boards of equalization, and, when so adjusted, becomes the tax roll on which the taxes are collected. By sec. 1036, R. S., the term "personal property" shall mean and include (besides other things) "all debts due from solvent debtors, whether on account, note, contract, bond, mortgage or other security, or whether such debts are due or to become due."

By sec. 1040, all "personal property" (which includes such securities) is assessed in the district where the owner resides. By sec. 1044, the assessor must place upon the assessment roll, opposite the name of any person, "all the personal property" owned by himself, wife, etc. By sec. 1050, every assessor shall ascertain and set down in separate columns the number and value of certain articles named, and, under subd. 10, the value of all other "personal property, except such as is by law exempt." From these provisions it is quite clear that the assessment roll must contain all the personal property of a person, and its valuation by the assessor, whether such valuation shall have been ascertained by the assessor independent of or in accordance with the sworn statement of such person. The valuation of it on the roll is his valuation of it. By sec. 1056, *to determine* the amount of notes, bonds, mortgages, etc., the person to be assessed shall be required to make a statement thereof under oath, etc. The assessor *determines* the valuation in such case by such statement, and it becomes his valuation by this evidence, the same as the valuation of other personal property by the examination of such person under oath.

We now approach understandingly the jurisdiction, powers, and duties of the board of review, as prescribed in sec. 1061, R. S. By that section, "the board shall, under their official oaths, carefully review and examine said roll and *statement*, and all valuations of real and personal property, and *bank stock*, and shall correct any errors," etc. The bank stock is first valued by the president, cashier, or other officer in charge, in a statement required by the assessor, according to sec. 1051, and may be revalued by the assessor, according to sec. 1057. The statement above referred to is evidently that statement. The board, therefore, reviews and examines the assessment roll of the valuation of bank stock, and the valuation in the statement of the officer of

the bank. " They shall correct any errors," etc. " *For that purpose* they are hereby required to hear and examine any person or persons upon oath who shall appear before them, in relation to the assessment of *any property* on said roll, or in relation to any property omitted therein, and, if it appear that any property has been valued by the assessor too high or too low, they shall increase or lessen the same, to the true valuation, according to the rules for valuing property prescribed in this chapter."

It is very clear that the review and examination here spoken of is not for the mere purpose of correcting errors in the assessment roll, as contended by the learned counsel of the appellant, but it is also for the purpose of lowering or raising the valuation of any property on the assessment roll according to the testimony of those who shall appear before them. "They shall determine the correct value of any bank stock which has been valued in his statement thereof by an officer of the bank at one price and by the assessor at a different price." "Any person who thinks the aggregate valuation of his personal property by the assessor too high, may appear and state to the board under oath the true aggregate valuation of *all personal property* upon which he is liable to taxation," etc. This certainly includes the *securities* as well as articles of personal property and bank stock, for it is the aggregate of the whole. " The board of review shall, when satisfied *from the evidence* taken that the assessor's valuation is too high or too low, lower or raise the same accordingly, whether the person assessed appear before them or not." The assessor's valuation is that which is on the assessment roll; for the assessor has to append to the roll his affidavit " that the valuation of personal property and bank stock in said roll is as fixed by [him] [unless changed by the board of review]; that each and every valuation of the property made by [him] is the just and equitable value thereof, as [he] verily believes."

It is the assessor's assessment roll and his valuation, in the meaning of the language of this section, irrespective of the statements made of bank stock or securities. This is the plain and obvious meaning of the language, taken in connection with the other provisions above alluded to. In this view, there is the fullest authority, jurisdiction, and power of the board to review the entire assessment roll, to correct errors therein, and to raise or lower the valuation of the personal property therein assessed.

The only restriction upon the power of the board is that, in raising or lowering the valuation of the personal property of any person on the assessment roll, or as made by the assessor, which is the same thing, the board must act and so decide on *evidence taken before them.* There is no exception of any class or kind of personal property in the statute, and no exception can therefore be made by judicial interpretation. It is very clear that the legislature did not intend to except from the review and correction by the board of review that important and valuable kind of personal property known as securities or credits. It is in that form that taxable property can be most easily concealed and protected from taxation. It is the common form and method of evading taxation. Some of the greatest capitalists and wealthiest persons of the state have but little, if any, visible property subject to taxation, and their property consists almost exclusively in money, notes, bonds, mortgages, and other securities, concealed from the assessor, and only known to themselves. They make the statement under oath of an average amount of valuation of such money and securities, deducting their average indebtedness. Is that final? If it is, then the statute is a very convenient and impenetrable shield against just and equal taxation. The board can correct or raise the valuation of all other kinds of personal property by evidence. Why not of this most valuable kind? It is said that the dis-

honest tax-payer can be prosecuted for perjury, if his average valuation is too low. It may be answered that such a conviction would not equalize the assessment, or relieve the honest tax-payer from bearing more than his just share of the burthen of taxation, while the convict is forever exempt. To convict would require evidence, and the board of review could obtain that evidence as readily.

But the language of the statute is clear enough to evince such an intention of the legislature without argument. The cases cited by the learned counsel of the appellant are not applicable to the statute now in force and above considered. The case of *State ex rel. Smith v. Cooper*, 59 Wis. 666, was one in which the statement to the assessor was not made by the tax-payer, and the board of review raised the valuation of his average securities upon evidence similar to that taken in this case, and this court held that the board acted within its powers in doing so. In *Shove v. Manitowoc*, 57 Wis. 5, the statement to the assessor was made on oath, and the average value of this class of property stated therein. The board of review raised such valuation to a much larger amount, but did it arbitrarily and without evidence. In construing this section of the statute, Mr. Justice Cassoday says: "Thus it appears that the board of review were authorized to increase or lessen the assessment only upon being 'satisfied from the evidence taken' that it was too high or too low." But the action of the board was held unlawful only because it was not based on evidence taken. To that extent it is authority in this case. It may be that this particular point was not contested, but it is an opinion on the construction of the statute as to the power of the board to raise the average valuation of this class of personal property above what it was valued in the statement under oath of the tax-payer.

It follows that the board of review had the power to

raise the average valuation of the securities of the relator, and did so on sufficient evidence.

*By the Court.*— The judgment of the circuit court is affirmed.