McKesson-Fuller-Morrisson Company, Appellant, vs. Industrial Commission and others, Respondents.

*September 12—October 10, 1933.*

For the appellant there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Arthur B. Doe* of counsel, and oral argument by *Victor D. Werner,* all of Milwaukee.

For the respondents there was a brief by *Olin & Butler* of Madison, attorneys for Ella Buck, the *Attorney General* and *Mortimer Levitan,* assistant attorney general, attorneys for the Industrial Commission, and oral argument by *Mr. E. L. Wingert* of Madison and *Mr. Levitan.*

OWEN, J. Plaintiff is a wholesale drug concern with branch headquarters in Chicago. For nearly forty years Charles Buck had been in its employ as a traveling salesman, covering territory in Minnesota and Wisconsin. Until about a year and a half prior to his death on January 6, 1931, Buck's headquarters were at Winona and his territory in Minnesota. At that time he was given Wisconsin territory, and he made his headquarters for a time at Eau Claire. At the time of his death his headquarters were at Madison and had been for about a year, from which point he covered his Wisconsin territory. On January 4, 1931, he drove to Chicago in obedience to a summons from the Chicago branch. It appears that he was so summoned for conference upon matters pertaining to his employment. Upon his return trip on January 6th, he met with an accident about a mile west of the village of Udine, in the state of Illinois, from which he died a few hours later. At the time of his death he maintained a home in Madison, where his mother, Ella Buck, in whose favor the award was made, lived with him. The award was to the mother for total dependency.

The first question raised on this appeal, though not seriously pressed, is a lack of jurisdiction on the part of the Industrial Commission to make the award. The plaintiff and employer is an unlicensed foreign corporation. Notice of hearing was duly mailed to the plaintiff at Chicago, but no notice was filed with the secretary of state, as required by sec. 102.17, Stats., in case a party in interest is located without the state and has no postoffice address within the state. It is contended that the filing of this notice with the secretary of state was essential to jurisdiction, the plaintiff and em-

ployer being an unlicensed foreign corporation with no post-office address in this state. This objection was made before the examiner before testimony was taken. No ruling was made upon the objection, but the examination proceeded, and the attorney for the employer appeared and took part at all times from the beginning to the end of the proceedings. It is contended that the necessary statutory steps to obtain jurisdiction of the employer were not complied with, in that no copy of the application or notice of hearing was filed with the secretary of state. But it is contended by respondent that such lack of jurisdiction was waived by appearance and participation in the proceedings before the Industrial Commission. Of course this is a familiar principle with reference to judicial proceedings. While this principle does not necessarily obtain in proceedings before administrative bodies, and while it is well understood that in certain administrative proceedings, such as laying out of highways and the formation of drainage districts, the administrative body must take all necessary statutory steps to acquire jurisdiction, nevertheless there is much reason for applying the rule obtaining in judicial proceedings where the administrative body is of a quasi-judicial nature. It has been applied in this state in proceedings before boards of review. *State ex rel. Smith v. Cooper,* 59 Wis. 666, 18 N. W. 438; *State ex rel. Smith v. Gaylord,* 73 Wis. 306, 41 N. W. 518; *Bogue v. Laughlin,* 149 Wis. 271, 136 N. W. 606. In view of these precedents, we hold that the general appearance made before the Industrial Commission waived any lack of jurisdiction on the part of the commission by reason of its failure to file the notice required with the secretary of state. Where the party interested intends to rely upon a lack of jurisdiction, it should refrain from appearing generally and participating in the proceedings, thus giving the Industrial Commission an opportunity to take the steps necessary to perfect its jurisdiction.

·The principal contention made by the appellant is that the Industrial Commission had no jurisdiction over this proceeding and, consequently, no jurisdiction to make the award, and a strenuous argument is made in the brief upon this question under the topic head "Conflict of Laws." No claim is made that the employer was not subject to the workmen's compensation act of this state, if its salesmen were employees rather than independent contractors, a question to be considered.

The plaintiff had three traveling salesmen in this state covering the territory of this state, working in much the same capacity characterizing Buck's services or employment. It is said, however, that there is no evidence that the contract of employment was made in Wisconsin; that whatever contract there was, was made when Buck entered the employment forty years ago, and that it was probably made in the state of Illinois, because that is where the principal office or the branch office under which Buck worked was located, and that the employment having been pursuant to an Illinois contract, and the accident having taken place in Illinois, the Industrial Commission of the state of Illinois and not Wisconsin had jurisdiction to award compensation. It also appears that at the time the award herein was made, Ella Buck had already made application to the compensation board of Illinois for compensation.

Questions very analogous if not entirely similar to those here argued have received the attention of this court in *Anderson v. Miller Scrap Iron Co.* 169 Wis. 106, 170 N. W. 275, 171 N. W. 935; *Zurich Gen. Acc. & L. Ins. Co. v. Industrial Comm.* 193 Wis. 32, 213 N. W. 630; *Wandersee v. Industrial Comm.* 198 Wis. 345, 223 N. W. 837; *Val Blatz Brewing Co. v. Industrial Comm.* 201 Wis. 474, 230 N. W. 622; *Interstate Power Co. v. Industrial Comm.* 203 Wis. 466, 234 N. W. 889. In all those cases this court has insistently maintained the position that where the relation of

employer and employee exists in this state, and the employee, as incidental to his duties, is sent beyond the borders of this state and there sustains an injury, he is entitled to compensation under the laws of our state. It does not make any difference where the contract of employment was made, neither does it make any difference whether the employee was a resident of this state.

When workmen's compensation laws originated they were challenged as an unwarranted interference with the right of contract. While it was conceded that they did interfere with the right of contract, such interference was held to be a legitimate exercise of the police power by the supreme court of the United States. In *New York Central R. Co. v. White,* 243 U. S. 188, 37 Sup. Ct. 247, the interest of the state in injured and crippled employees was pointed out, and on page 207 it was said:

"One of the grounds of its concern with the continued life and earning power of the individual is its interest in the prevention of pauperism, with its concomitants of vice and crime. And, in our opinion, laws regulating the responsibility of employers for the injury or death of employees arising out of the employment bear so close a relation to the protection of the lives and safety of those concerned that they properly may be regarded as coming within the category of police regulations."

In the cases above cited this court has emphasized the fact that the workmen's compensation act affects the relation of employer and employee, and its benefits extend to all those who are brought under its provisions. Under the express provisions of the act, an employee is one who renders services for another in the state of Wisconsin under a contract of hire, express or implied, oral or written. Where the employer under the act engages a person to perform services in this state under a contract of hire, express or implied, no matter where or when such contract may have been engendered, such employee is under our act and is entitled to its

benefits, and this is so even though he is injured while outside of this state rendering services incidental to his employment within this state. The place where the contract is made is not controlling. Whether the employee be a resident of this state is not material. The controlling and decisive factor is whether he had a status as an employee within this state. If he renders services for another who is under the workmen's compensation act in this state, he thereby acquires a status which entitles him to compensation under our act. So in this case it is not material where the contract was made. It is not material whether the employee was a resident of this state. The fact overwhelmingly appears, and is not disputed, that the deceased was stationed in this state carrying on his employer's business in this state, and that his ill-fated trip to Chicago was a mere incident to his employment in this state.

We can do no more than emphasize what we think plainly appears from the cases above cited, that in all cases where compensation is sought under circumstances such as these, the dominant consideration is whether the employee had obtained the status of an employee in this state, a status which may be attained by rendering service in this state to one who is under the workmen's compensation act of this state. Having attained that status, injury sustained while absent from the state on a mission incidental to his main employment in this state, will be compensated under our act. This is the plain theory upon which compensation was awarded in *Interstate Power Co. v. Industrial Comm.* 203 Wis. 466, 234 N. W. 889, and it was there held that our compensation act attached when the employee rendered services in this state to one who was under the workmen's compensation act of this state, and that the right to such compensation was not defeated by the fact that he was entitled to compensation under the laws of Iowa, the locus of his principal employment. It is unnecessary for us to intimate here whether a different

result would have been necessary in that case had the full-faith-and-credit clause of the federal constitution been urged or relied upon. *Bradford Electric Light Co. v. Clapper,* 286 U. S. 145, 52 Sup. Ct. 571. That question, as we view it, is not here. Neither is it for courts to concern themselves over the prospects of double liability. That is a matter for the legislature to deal with, although we held that it is not improper for the Industrial Commission to take prior awards made in other states into consideration and give credit to the employer for such amounts as he paid under the acts of other states. It is true that we held in *Val Blatz Brewing Co. v. Industrial Comm.* 201 Wis. 474, 230 N. W. 622, that there might be such a thing as a constructive status of an employee in this state which would continue until an actual status was established elsewhere. This is conceded to have been a liberal construction of the statute in order to carry out its beneficent purposes. In that case an employer of this state, who was under the workmen's compensation act, entered into a contract with an employee presumably resident in this state, to render service outside of the state. The contract of employment did not contemplate the performance of service in this state, but this state had the same interest in the protection of that employee that it had in the protection of employees actually rendering services in this state. If maimed or crippled, he would become a public charge in this state, on the assumption that he was a citizen herein. If this holding be a fiction, it is not the only fiction known to the law, and we think it is justifiable in order to carry out the beneficent purposes of the law and to secure not only to the employee the benefits of the law but to protect the state so far as may be from the consequences of pauperism.

It is further urged that the deceased was an independent contractor rather than an employee; that this is true of its other salesmen in this state and, if so, he was not under the compensation act. In our consideration of this question we

shall disregard the fact that the deceased was paid a fixed salary of $50 per month in addition to his commission. We do this because it does not appear whether the other traveling salesmen received any compensation except their commissions, and in order to bring the employer under the act it is necessary that all three salesmen occupy the status of employees rather than independent contractors. The deceased was given a specified territory in this state. His employment was for the purpose of promoting the business and sales of the employer within that territory. It is said that he was at liberty to prosecute this business at such times and in such manner as he saw fit; that he could come and go as, when, and where he saw fit. However, we think this means only that the employer did not see fit to give him detailed directions concerning the time or manner or portion of the territory which he should visit from day to day. Of all of plaintiff's organization he was the man in closest touch with the business of his territory, and his forty years of experience as a salesman in its employ afforded him better judgment as to the efficient manner in prosecuting his employer's business in his territory. The fact that there was no interference with or directions concerning the manner in which he should perform his daily duties does not mean that the employer did not have the right to so interfere or to so direct, and whether it had the right is the test under all the authorities. *Madix v. Hochgreve Brewing Co.* 154 Wis. 448, 143 N. W. 189; *Weyauwega v. Industrial Comm.* 180 Wis. 168, 192 N. W. 452; *Badger Furniture Co. v. Industrial Comm.* 200 Wis. 127, 227 N. W. 288; *Kruse v. Weigand*, 204 Wis. 195, 235 N. W. 426.

From the record it appears that the company shifted its salesmen's territory at will, and that they took their instructions from a sales manager, and that a salesman who refused to obey instructions would be discharged. The assistant sales manager of the appellant testified that the non-inter-

ference of the appellant with its salesmen in many matters was due to its policy and not to its right—that "we are the boss—supposed to be," and it appears that the deceased was in Chicago pursuant to directions from the Chicago office. It was held in *Habrich v. Industrial Comm.* 200 Wis. 248, 227 N. W. 877, that under circumstances such as here "it will be presumed that the person injured was an employee and that the burden of proving otherwise rests upon the one seeking to defeat compensation." This burden was not met in this case so as to place it beyond the province of the Industrial Commission to find that the deceased was an employee. As it appears that plaintiff had three of .these salesmen in this state, it follows that it was under the compensation act.

As already stated, the award in this case was for total dependency. Ella Buck had a real-estate bond of the par value of $1,000, from which she received an income of $62.50 per year. It is contended that, in view of this income, the finding of total dependency was unwarranted. She was seventy-eight years of age and had been bedridden ever since she suffered a stroke of paralysis a little over a year before the death of Charles. For total dependency the legislature provided compensation in a sum equal to four times the average annual earnings of the deceased employee, and for partial dependency a death benefit of $1,200. While the legislature does not define either total or partial dependency, it must be assumed that it was legislating reasonably. To say that it was intended that any petty income should work a result equal to the difference between $6,000 and $1,200, as in this case, could hardly be considered reasonable legislation. The Industrial Commission was of the opinion that "applicant's meager personal property and income was not sufficient to justify a finding that she was partially dependent." In *Janesville S. & G. Co. v. Industrial Comm.*

197 Wis. 421, 222 N. W. 317, it was considered whether a daughter having earning capacity who up to the time of his death had been supported by her father, was totally dependent upon him. After a review of the English authorities upon the subject it was held that the fact that she was physically capable of earning her own living did not negative her total dependency if in fact prior to the death of her father she had been supported by him in return for services rendered by her to him. In that case was also cited *Peterson v. Industrial Acc. Comm.* 188 Cal. 15, 204 Pac. 390, where the question was whether a sister and nephew were totally dependent upon a deceased workman. It appeared that the sister had done a small amount of work in taking care of children in the neighborhood and that the nephew had delivered papers. The court held that these petty earnings would not be permitted to deprive applicants of the rights accorded total dependents, as it did not substantially affect or modify the status of the applicants towards the deceased employee. It is difficult to fix any given amount of income which will deprive the applicant of the status of total dependency. We think it is a question of fact to be decided in every case upon the facts of the case, and go no further at this time than to say that income which can be considered *de minimis non curat lex* will not be permitted to deprive the applicant of the status of total dependency. We think that under the facts of this case the income which claimant received from her bond should be so regarded, and that the finding of total dependency made by the Industrial Commission was justified.

*By the Court.*—Judgment affirmed.