VAL BLATZ BREWING COMPANY and another, Respondents, vs. INDUSTRIAL COMMISSION OF WISCONSIN and another, Appellants.

*February 4—April 29, 1930.*

For the appellant Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan* and *Herbert H. Naujoks,* assistant attorneys general, and oral argument by *Mr. Naujoks.*

*I. B. Padway* of Milwaukee, for the appellant Gerard.

For the respondents there was a brief by *Richmond, Jackman, Wilkie & Toebaas* of Madison, and oral argument by *Harold M. Wilkie.*

STEVENS, J. (1) The proof shows that the deceased was accustomed to solicit orders for his employer during the evening as well as during the day; that he had in fact called upon customers of his employer during the evening shortly prior to the time that he was struck by the automobile; and that at the time of the accident he was near the place of business of one of these customers whom he had said that he was going to call on that evening. The proof is sufficient to sustain the finding of the Industrial Commission that he was injured while performing services growing out of and incidental to his employment.

(2) The principal question presented is whether the Wisconsin compensation act applies to an employee who enters into a contract of employment in Wisconsin to perform services entirely outside of the state.

A study of the cases that have arisen under the workmen's compensation acts of the various states discloses that courts did not at first fully appreciate the fundamental change wrought by the adoption of these acts. In the earlier cases there was a tendency to construe these laws in the light of the rules that were applied in the old common-law tort action, which it was the purpose of these acts to replace, just as the common-law lawyers and judges, who interpreted our Code of 1856, read into it the technical rules of the old procedure which it was the purpose of the Code to supersede.

This tendency is illustrated by *Gould's Case*, 215 Mass. 480, 102 N. E. 693, which was the first American case to consider the question whether compensation could be awarded for injuries sustained outside the state. Applying the rules which prevailed in tort actions, the Massachusetts

court concluded that compensation could not be awarded for an injury sustained outside the state. The Massachusetts court followed the decisions of the English courts which held that the British act did not apply to injuries which occurred outside Great Britain. But the English courts did not deal with the problem which is here presented, because its act covered all cases that arose in the British Isles, excluding only those that occurred beyond the seas. The English cases therefore did not deal with the question of the effect of state boundaries upon the right to compensation.

American courts, however, soon came to appreciate that the workmen's compensation act is not a mere substitute for common-law liability for tort. This court was one of the first to declare that "the liability of the employer under the compensation act rests upon an entirely different basis than that of his liability at common law." *Anderson v. Miller Scrap Iron Co.* 169 Wis. 106, 117, 170 N. W. 275, 171 N. W. 935.

The case just cited was one of the first to clearly demonstrate that liability under the workmen's compensation act "grows out of and is incidental to a relationship based upon contract, but that does not make it contractual any more than it made the liability of the employer at common law contractual; . . . that the workmen's compensation act of Wisconsin is so far a part of every contract of employment that the rights and liabilities of the parties thereto in case of injury to the employee, both being subject to it, must be determined in accordance with its provisions, whether such injuries occur within or without the state." *Anderson v. Miller Scrap Iron Co.* 169 Wis. 106, 113, 118, 170 N. W. 275, 171 N. W. 935.

Liability for compensation arises out of the relationship of employer and employee. The act imposes no obligation to pay compensation on any one who is not an employer or who does not stand in the shoes of an employer. It grants

no right to compensation except in those cases where the injury is sustained by one who is an employee. Compensation is limited to accidents which occur while "the employee is performing service growing out of and incidental to his employment." Sub. (2) of sec. 102.03 of the Statutes. The right to receive and the liability to pay compensation grow out of and are incidental to the status created by the employment. It is the creation of this status which brings the employer and the employee within the provisions of the compensation act and, under sanction of the act, attaches, as an incident to this status, the obligation to pay compensation.

Liability under the workmen's compensation act is, strictly speaking, neither tortious nor contractual in its nature. It is an obligation imposed by law which arises out of the status created by the employment. The liability arises out of the law itself, rather than out of the contract of the parties. The law operates upon the status and attaches certain rights and obligations to that status. The relationship of employer and employee has its origin in the contract of employment; but when that relationship is created by the contract, the respective rights and liabilities with reference to compensation depend upon the provisions of the law, not upon the contract of the parties. The fundamental idea upon which liability is imposed is that an injury to an employee, like damage to a machine, is a burden that should be borne by the product of the industry and ultimately paid by those who consume this product.

In the exercise of its police power the state, by the enactment of the compensation act, has measurably limited freedom of contract with reference to the matter of compensation for human life or limb lost or disability incurred in the course of employment, and the public has a direct interest in this as affecting the common welfare. " 'The whole is no greater than the sum of all the parts, and when the individual health, safety, and welfare are sacrificed or neglected, the

state must suffer.' . . . One of the grounds of its concern with the continued life and earning power of the individual is its interest in the prevention of pauperism, with its concomitants of vice and crime. And, in our opinion, laws regulating the responsibility of employers for the injury or death of employees arising out of the employment bear so close a relation to the protection of the lives and safety of those concerned that they properly may be regarded as coming within the category of police regulations." *New York Cent. R. Co. v. White,* 243 U. S. 188, 206, 207, 37 Sup. Ct. 247.

The interest of the state in the protection of the health and lives of its citizens and "in the prevention of pauperism, with its concomitants of vice and crime," is the same whether its citizens be injured in their employment in this state or outside its borders. Business has scant respect for state boundaries. Employees cannot hope to retain their employment if they refuse to go outside the state to perform service when directed so to do by their employers. Wisconsin has "extensive borders; thousands of employees are passing out of and into Wisconsin daily, and almost hourly, in the discharge of their ordinary duties. Can it be that the legislature intended that every time these employees crossed the state line their right to compensation for injuries incidental to and growing out of their employment should be changed, and that as to injuries which occur beyond the state line the old system instead of the new should apply?" *Anderson v. Miller Scrap Iron Co.* 169 Wis. 106, 117, 170 N. W. 275, 171 N. W. 935.

If an employee resident in Wisconsin loses his right to compensation the moment he crosses the state line, so far as he is concerned the whole beneficent purpose of the workmen's compensation act would be frustrated. Both the employer and employee would be relegated to the uncertain rights and liabilities of the common-law tort action or to the

equally uncertain remedy of the workmen's compensation act of some sister state of whose provisions they had no knowledge and with which they had made no attempt to comply. The result might be a situation that would be more uncertain and less satisfactory to employer and employee than that which prevailed before the adoption of the workmen's compensation acts. To subject employers "to the laws of the many jurisdictions in which they may be engaged will be especially burdensome to them, and involve them probably in greater expense and liability and far greater difficulties than under the old system. Equally hard will it prove to the employee, since he must pursue his remedy in the state of the accident, or the federal court applying that state's law, and thus he may be brought under any one of many different compensation acts, with whose provisions he cannot hope to be familiar; some acts contractual in character, some compulsory, some optional, and some *ex delicto*, and he may find he has forfeited the benefit of the foreign act through failure to comply with its provisions. A reading of the several acts now in force convinces us that these difficulties are not imaginative, but imminent actualities. Is it reasonable to infer that our legislature, inaugurating a new system, based upon humanitarian and economic considerations, should intentionally frustrate the object of the new system and cast a multitude of employers and employees into a maelstrom of trouble, uncertainty, and liability?" *Grinnell v. Wilkinson,* 39 R. I. 447, 98 Atl. 103, L. R. A. 1917 B, 767, 771; *Kennerson v. Thames Towboat Co.* 89 Conn. 367, 94 Atl. 372, L. R. A. 1916 A, 436, 441.

The Wisconsin act "contains no language from which it may be inferred that its application was intended to be limited to injuries which occur within the state." *Anderson v. Miller Scrap Iron Co.* 169 Wis. 106, 112, 170 N. W. 275, 171 N. W. 935. The Wisconsin act applies to all cases "where, at the time of the accident, the employee is perform-

ing service growing out of and incidental to his employment." Sub. (2) of sec. 102.03 of the Statutes. This statute does not distinguish between injuries sustained in Wisconsin and those happening outside of its borders. The one essential requisite to liability under the Wisconsin compensation act is employment under such circumstances as to create the status of employer and employee under the Wisconsin act. That status arises out of the contract of employment, which may be either "express or implied, oral or written." Sub. (1) of sec. 102.07 of the Statutes. It may be made by express agreement. It may be implied from the performance of service.

That status is created when service is performed within the state under a contract of hire, without regard to the question of where the contract was made. Such status may also exist where no service is performed in the state in those cases where both the employer and the employee are residents of the state when the contract is made. The state has such an interest in the welfare and protection of its citizens and of those dependent upon them that it may in the exercise of the police power extend the protection of its compensation act to citizens of the state who are injured while performing service outside its boundaries.

Residents of Wisconsin who make contracts of employment in this state are bound by the terms of the Wisconsin act, because all residents of the state are subject to and bound by its laws. When the state exercises the police power, no principle of law and no constitutional right is violated by attaching to contracts of employment made in the state by residents of Wisconsin the same rights and duties incident to service outside of the state that are lawfully imposed as incident to the performance of service within the boundaries of the commonwealth.

This power of the state to thus limit the freedom of its citizens to contract arises out of the interest which it has in

the welfare of its citizens and the duty which it has to protect and care for them and their dependents. In case of injury to an employee resident in Wisconsin, whether the injury is sustained within or without its boundaries, the state must care for the employee and his dependents, if they are not able to care for themselves or are not cared for by the employer.

When residents of the state contract for service to be performed outside the state, a constructive status under the Wisconsin compensation act is created, which continues until the employee acquires an actual status as an employee in some other state. The situation is not unlike that presented when a question of residence is involved. A person, generally speaking, can have but one legal residence, which, once established, persists until a new residence is acquired elsewhere.

The power of the state to impose such rights and duties as an incident to contracts of employment to be performed outside the state is dependent upon the existence and the continuance of a status, actual or constructive, which makes both the employer and the employee subject to the Wisconsin compensation act. When that status no longer exists, the power of the state to prescribe the respective rights and liabilities of employers and employees for injuries sustained outside the state is at an end. Our workmen's compensation act cannot be given extraterritorial effect such as will regulate the rights of citizens of other states who perform service wholly outside of this state,—no matter where the contract of employment is made. Each state must be left free to determine how it will care for its employees and their dependents when injuries are sustained in industries conducted within its borders.

This is the rule that has been adopted in the prior decisions of this court. In both *Anderson v. Miller Scrap Iron Co.* 169 Wis. 106, 170 N. W. 275, 171 N. W. 935, and in *Zurich G. A. & L. Ins. Co. v. Industrial Comm.* 193 Wis. 32, 213

N. W. 630, the employees, who were residents of Wisconsin and who had made their contracts of employment in Wisconsin, were awarded compensation for injuries sustained outside the state. In *Wandersee v. Industrial Comm.* 198 Wis. 345, 223 N. W. 837, the employee was denied compensation because he was a resident of Minnesota, who was not subject to the laws of Wisconsin and whose service was to be performed outside of the state.

The contract of employment here in question was made in Wisconsin. The service was to be performed outside the state. The right to claim compensation under the Wisconsin act was therefore dependent upon the question whether at the time of injury there existed a status which subjected both employer and employee to the provisions of the Wisconsin compensation act. So far as the record discloses, the status of the deceased employee is dependent upon the question whether he was a resident of Wisconsin at the time that the contract of employment was made, and, if so, whether his status under the compensation act continued down to the time that he sustained the injury that caused his death. These questions do not seem to have been litigated. The commission made no finding upon these controlling issues. The proof does not disclose facts upon which findings can be made upon this record. The statement of decedent's wife that at the time of injury they were living in Missouri is not necessarily controlling. Residence or citizenship is largely a question of intention, evidenced oftentimes by overt acts. The temporary removal of the family of a citizen of Wisconsin to another state in order that they may be where the citizen is employed does not change legal residence or result in a loss of citizenship in Wisconsin, unless the removal is made with intent to give up legal residence in this state and acquire such residence elsewhere.

To properly determine the rights of the parties, the judgment must be reversed with directions to remand the record to the Industrial Commission for the purpose of determining

whether at the time the contract of employment was made it created a status which subjected both the employer and the employee to the provisions of the Wisconsin act, and, if so, whether such status continued down to the time that the injury was sustained.

*By the Court.*—Judgment reversed. Cause remanded for further proceedings.