DUNVILLE, Appellant, vs. INDUSTRIAL COMMISSION and others, Respondents.

*April 13—May 17, 1938.*

For the appellant there was a brief by *Kelley & Kahlenberg* of Manitowoc, and oral argument by *Edward L. Kelley* of Madison.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

*Charles H. Gorman* of Milwaukee, for the respondents Kahlenberg Brothers Company and American Mutual Liability Insurance Company.

MARTIN, J.   The only question is: Was the deceased, George Dunville, subject to the Workmen's Compensation Act at the time of his injury?  He was a resident of St. Louis, Missouri, and never had been a resident of Wisconsin.  The respondent, Kahlenberg Brothers Company, is a corporation engaged in manufacturing gas engines and located in the city of Two Rivers, Wisconsin.  In May, 1935, Mr. Dunville called on Kahlenberg Brothers Company and interviewed some of its officers with a view of securing employment by said company as a salesman.  No position was then open.  Thereafter, there was some correspondence between Mr. Dunville and said company relative to such position, and on July 25, 1935, Kahlenberg Brothers Company wrote Dunville stating that they were offering him a position as salesman at $175 a month, with certain additional commissions, and if same was acceptable to advise by return mail and come to the factory at Two Rivers.  To this offer, Mr. Dunville replied by letter on July 26, 1935.  He therein stated that he accepted respondent's offer, and that he would call at the factory at once to be of such service as the company might wish.  It appears that Mr. Dunville called at respondent's factory at Two Rivers on August 4th and remained there until August 9, 1935, during which time he was given demonstrations and instructed in the matter of

showing customers actual installations. He was instructed to bring prospective customers to the factory for demonstrations. The sales manager testified:

"That Dunville was instructed at the plant concerning the mechanical features of the engine and given information to enable him to go out in a sales capacity and contact prospective customers. . . . This was an essential part of his work to acquaint himself with our product. He knew nothing about engines and we had to teach him."

The appellant claims that a contract of hire was entered into by correspondence, and that thereafter a formal written agreement was made. A written agreement was in fact made on August 8th, but dated as of August 15th. The salary was fixed at $175 per month, payable on the second and sixteenth of each month, or as soon thereto as possible. The contract assigned definite territory; the company reserving the right to send Mr. Dunville outside of the territory assigned him under the contract. The contract further provided:

"The term of this agreement shall be August 1st of the year in which this agreement is entered into and thereafter until August 15, 1936, with the provision that if the manufacturer or the salesman so elects, he may dispense with the salesman's service for sixty days during the summer, or at a time when solicitation is unprofitable and salesman is not to receive compensation during such times. After August 15, 1935, either party hereto may terminate the foregoing agreement by giving the other party thirty days' notice in writing of their or its desire to so terminate said agreement."

While this agreement was in force and on January 24, 1936, Mr. Dunville was injured in an automobile collision in Illinois, while in the course of his employment as a result of which injuries he died at St. Louis, Missouri, on February 1, 1936. Mr. Dunville received no salary nor made any claim for salary for any period prior to August 15, 1935. The company did pay the expense of his trip to the factory

and while he was in Two Rivers, from August 4th to August 9, 1935.

On June 19, 1936, an examiner for the Industrial Commission made findings and entered an order awarding compensation to the appellant. The order and award made by the examiner were thereafter set aside and a further hearing was had before the commission on September 24, 1936. Following this hearing, and under date of January 22, 1937, the Industrial Commission made its findings, upon which an order was entered dismissing the appellant's application. Among other facts, the commission found:

"That on August 8, 1935, George Dunville, now deceased, and respondent entered into a written contract whereby respondent agreed to employ deceased as a salesman in certain prescribed territory, all of which was outside of the state of Wisconsin; that prior to the execution of said contract deceased was invited to come from his home in St. Louis, Missouri, to the home office of respondent at Two Rivers, Wisconsin, at the expense of respondent, to acquaint himself with respondent's products and methods, and to enable respondent's officers to become acquainted with him; that deceased arrived at respondent's plant on August 5, 1935, and on August 8th entered into a formal contract of employment with respondent, and left for his home in St. Louis on August 9, 1935; that the contracting parties contemplated that services of the deceased under the contract would begin August 15, 1935; that deceased actually began work under the contract on August 15, 1935, and rendered his weekly expense reports accordingly; that he was paid no salary for any period prior to August 15th and never made claim for salary for any period before that date; that deceased performed no service for respondent within this state; that he did not return to the state of Wisconsin after leaving on August 9, 1935, and was killed in an automobile accident near Mt. Vernon, Illinois, on February 1, 1936.

"The commission concludes that deceased did not become subject to the Wisconsin Workmen's Compensation Act for

the reason that he performed no service under the contract within this state. Point is made of the fact that deceased spent four days at respondent's plant prior to the execution of the contract and that paragraph eleven of the contract defines the terms of the agreement as 'August 1 of the year in which this agreement is entered into and thereafter until August 15, 1936.' The use of the date 'August 1' in paragraph eleven is explained by respondent as an error, it being claimed that all dates in the original unsigned draft were 'August 1' and that all were intended to be changed to August 15 before execution of the agreement. Whether or not this is true is considered immaterial in view of the undisputed testimony that the contract was not executed by the parties until the 8th of August, 1935. What was done prior to the date of execution was not service under a contract of hire but was a part of the usual preliminary inspection and discussion leading up to the contract of hire."

The trial court confirmed the findings and orders as made by the Industrial Commission. The facts are not in dispute. The controversy arises in the application of the law to the conceded facts. The appellant contends that Mr. Dunville's services commenced when he arrived at the Kahlenberg Brothers Company factory, in Two Rivers, on August 4 or 5, 1935; that a contract for hire had theretofore been made by correspondence, and was thereafter embodied in the more formal written agreement entered into on August 8th. Appellant relies further upon the provision which defines the term of the agreement as "August 1st of the year in which this agreement is entered into and thereafter until August 15, 1936."

There is very convincing evidence to sustain the finding of the commission "that the contracting parties contemplated that services of the deceased under the contract would begin August 15, 1935." The deceased never claimed any salary for any period prior to August 15th. True, the Kahlenberg Brothers Company paid the expense of his trip to and while

he was at their factory in the fore part of August, but in view of the fact that the parties entered into a formal contract on August 8th, under which the deceased actually commenced work on August the 15th, there is ample evidence to sustain the commission's finding that the parties contemplated that the services of the deceased would begin on August 15th, and that what was done prior to the date of executing the contract was not service under a contract of hire, but was a part of the usual preliminary inspection and discussion leading up to the contract of hire.

In *Wandersee v. Industrial Comm.* 198 Wis. 345, 347, 223 N. W. 837, referring to sub. (4) of sec. 102.07, Stats., the court said:

". . . The purpose of this act was to regulate the relation of employer and employee in the state of Wisconsin. Therefore, to constitute a person an employee under the provisions of the act such person must render service for another in the state of Wisconsin under a contract of hire, express or implied, oral or written. Until he performs service for another in the state of Wisconsin he is not an employee. The terms of the act do not affect him and he is not bound by it. As soon as he performs service for another in the state of Wisconsin under a contract of hire, then the act enters into and becomes a part of the contract, 'not as a covenant thereof, but to the extent that the law of the land is a part of every contract' (*Anderson v. Miller Scrap Iron Co.* 169 Wis. 106, 170 N. W. 275, 171 N. W. 935), and he is entitled to compensation under the act for injuries sustained while rendering service under the contract, whether it be within or without the state. *Anderson v. Miller Scrap Iron Co., supra; Zurich G. A. & L. Ins. Co. v. Industrial Comm.* 193 Wis. 32, 213 N. W. 630."

The specific question in the *Wandersee Case* was whether our Workmen's Compensation Act applies to services rendered in another state pursuant to a contract made in this state; no services being rendered in this state under and pur-

suant to such contract. Of course, the rule is otherwise where the employee and the employer are both residents of Wisconsin. *Val Blatz Brewing Co. v. Industrial Comm.* 201 Wis. 474, 230 N. W. 622; *Jutton-Kelly Co. v. Industrial Comm.* 220 Wis. 127, 264 N. W. 630; *Wisconsin Bridge & Iron Co. v. Industrial Comm.* 222 Wis. 194, 268 N. W. 134. In *Interstate Power Co. v. Industrial Comm.* 203 Wis. 466, 234 N. W. 889, this court reviewed many of its former decisions and said, at page 472:

"From the foregoing cases it may be concluded that where the employer and employee are residents of Wisconsin, and the contract is made in Wisconsin, the provisions of the Wisconsin act become a part of the contract of employment, and the employee is entitled to the benefits of the act no matter where he performs the services and no matter where his injury in the course of his employment is sustained. It may also be taken as established by the *Wandersee Case* that where the employee neither lives in Wisconsin, nor performs service in Wisconsin, nor is injured here, he is not under the act even though his employer resides in Wisconsin and the contract is made in this state. In all of these cases the fact that the contract is made in this state and that the parties are resident here is treated as a major factor in determining that the Wisconsin law has extraterritorial effect."

The appellant further contends that the evidence received over objection as to the effective date of the contract was not admissible. Paragraph eleventh of the contract reads: "The term of this agreement shall be August 1st of the year in which this agreement is entered into and thereafter until August 15th, 1936. . . ." The vice-president of the respondent, Kahlenberg Brothers Company, was asked the following question:

"*Q.* I direct your attention to paragraph 11 of Exhibit 'A,' and particularly to the first line thereof, in which the

word and figure 'August 1' appears. What is the significance of that date?"

Objection was made that the answer might tend to vary the terms of the written contract. The objection was overruled and the witness answered:

"*A*. That is merely a stenographical error. It should have been the 15th."

The further question was asked:

"*Q*. What was the date that the contract, Exhibit A, was to have become effective?"

Over a like objection and ruling, the witness answered:

"*A*. August 15."

It appears that Exhibit A, the contract, is a duplicate original, made with carbon paper. The figure "15th" is typed in wherever it appears. Now, the fact that Dunville did not arrive at respondent's factory until August 4th or 5th; that the contract though actually signed on August 8th was dated as of August the 15th; that Dunville was never paid any salary for the period from August 1st to 15th; that he never made any demand for that period; and that he began to cover his territory on the 15th, would clearly indicate that the date, August 1st, in paragraph eleventh, should read August the 15th. The explanation is reasonable and consistent with the conduct of the parties,—manifestly a clerical error, the explanation of which did not violate the parol-evidence rule.

The findings are supported by credible evidence and are therefore conclusive. The conclusion that "deceased did not become subject to the Wisconsin Workmen's Compensation Act" is correct. *Zurich G. A. & L. Ins. Co. v. Industrial Comm.* 193 Wis. 32, 37, 38, 213 N. W. 630; *Val Blatz Brewing Co. v. Industrial Comm.* 201 Wis. 474, 483, 484, 230 N. W. 622; *Jutton-Kelly Co. v. Industrial Comm.* 220

Wis. 127, 264 N. W. 630; *Wisconsin Bridge & Iron Co. v. Industrial Comm.* 222 Wis. 194, 195, 268 N. W. 134; *Tiffany v. Industrial Comm.* 225 Wis. 187, 273 N. W. 519; *Heineman Lumber Co. v. Industrial Comm.* 226 Wis. 373, 379, 276 N. W. 343.

*By the Court.*—Judgment affirmed.