## FAY v. INDUSTRIAL COMMISSION et al.

No. 6259.   Decided June 18, 1941.   (114 P. 2d 508.)

*Edward B. Twining,* of *Platt & Black,* of Portland Or., and *H. G. Metos,* of Salt Lake City, for plaintiff.

*Joseph Chez,* Atty. Gen., and *Judd, Ray, Quinney & Nebeker,* of Salt Lake City, for defendants.

WOLFE, Justice.

Certiorari to review an order of the Industrial Commission denying plaintiff benefits on account of the death of her husband, Richard W. Fay, a salesman for B. F. Goodrich Company. He was killed on March 30, 1939, in an automobile accident in the State of Idaho, while traveling in the course of his employment.

The facts are not disputed. Fay entered the employ of the B. F. Goodrich Company at his home office in Akron, Ohio, on November 6, 1933, and was continuously in its employ until his death. At first he was engaged in sales promotion work in the Midwest. In 1935 he was transferred to California to work in a similar capacity, later being promoted to missionary salesman. In the fall of 1937 he was appointed salesman for a territory covering Utah, Montana, Idaho, and sections of Nevada, Oregon and Washington. He received a salary increase at that time which was approved by the home office in Akron. About January 1, 1938, Fay assumed his new duties and thereafter maintained headquarters in Salt Lake City. His employment was then carried by the rubber company as being in this state in its reports covering Workmen's Compensation, Unemployment Insurance, and the Federal Social Security Tax. From that time on, Fay worked about 50% of the time in Utah, maintained a residence in this state, reported his itineraries to, and received his mail through Goodrich store in Salt Lake City. His travel in the other states in his territory was, to a considerable extent in contacting customers of Salt Lake City business houses through which Goodrich products were sold. He received his instructions and salary through the company's branch in Los Angeles.

There is involved the construction of Sec. 42-1-52, R.S.U. 1933, which provides as follows:

*"If a workman who has been hired in this state receives personal injury by accident arising out of or in the course of such employment, he shall be entitled to compensation according to the law of this state, even though such injury was received outside of this state.* If a workman who has been hired outside of this state is injured while engaged in his employer's business and is entitled to compensation for such injury under the law of the state where he was hired he shall be entitled to enforce his rights against his employer in the courts of this state." (Italics added.)

We are particularly concerned with the sentence of the above section which we have italicized, since it defines the

conditions under which compensation under the law of this state may be granted. The primary requisite is that claimant be "a workman who has been hired in this state." In the case before us we have a claim under our act, not an attempt to enforce the law of another state in our courts, as provided for in the second sentence of the above-quoted section.

In this case Fay had entered the company's service several years previously in Akron, Ohio. The Commission found that when he was transferred to the Salt Lake City territory, it was not a new contract of employment and that "Mr. Fay was not hired in this state at any time." It is apparent that the Commission construed the phrase "hired in this state" to be restricted to a contract of hire by means of which the employer-employee relationship had its inception. Since it did not find that Fay's new duties were performed under a new contract of hire, or that a contract of hire had been executed in Utah, the claim was denied. In that the Commission was in error.

Heretofore our act has been held applicable in three situations: (1) Where the contract of employment was made in this state, *the status maintained and localized in this state* and the employee injured in this state. (2) Where the contract of employment was made in this state, *the status maintained and localized in this state* and the employee injured outside this state. (3) Where the contract of employment was made outside this state, *the status was maintained and localized in this state,* and the employee was injured in this state. The applicability of the Act to situations 1 and 2 is at once apparent from a reading thereof. Its applicability to the third situation was determined in the case of *Buckingham Transportation Company* v *Ind. Comm.,* 93 Utah 342, 72 P. 2d 1077, 1083. In the Buckingham case, Kennedy, the claimant, was employed at Denver, Colorado, by the transportation company. His headquarters were at Salt Lake City and he was injured in Utah. In applying the Utah Act to that situation, the court made the following statements:

"We have already shown that our act is one affecting the status of employer and employee *and is in nowise dependent upon the provisions of the contract of employment for its operation.* * * * The state of Utah has seen fit, under its police power, to regulate the status of employer and employee, with certain exceptions not material here, *where that relation is sustained within this state.* * * * When plaintiff sent Kennedy into this state to work for it here, *it put him and itself within the reach of our act without regard to the law of the place where the employment contract was made.* Likewise, whether Kennedy or plaintiff were residents of this state is immaterial. *The controlling and decisive factor is* ᵗhat they maintained the status of employer and employee here." (Italics added.)

The court further said in that case:

"We do not think that the Legislature, after having used the broad language it did in section 42-1-40 in defining an employer as being one who has three or more workmen in his employ under 'any contract of hire,' intended to limit, by section 42-1-52, the application of the act to those cases only where the contract of hire was made in this state. Such an interpretation would furnish a means of completely nullifying the force of our act by resorting to the simple expedient of making the contract of hire in some other state."

We have quoted at length from the Buckingham case though it refers to a claim involving an injury within this state. From its language and from the language of the statute heretofore set out, it is clear that the claim under the Utah act was allowed by interpreting the phrase "hired in this state," to mean the status of being hired, or in other words, the maintenance of the status of employer and employee, in this state. By so construing that phrase, this court and others have held the statute to apply in the case of an injury within the state where the contract of employment had its inception in another state.

The case now before us presents a fourth situation. The contract of employment had its inception outside of the state, *the status was maintained and localized in this state,* and the injury took place outside the state. It is possible that the courts will be confronted with still other situations in the future. In the Buckingham case, supra, the court said,

quoting from *Ocean Accident & Guar. Corp.* v. *Ind. Comm.*, 32 Ariz. 275, 257 P. 644:

"* * * the last sentence of said section [42-1-52 heretofore set out] applies only to cases where both the status of employer and employee and the injury arose outside of the state of Utah."

From the other language used, indicating that in all situations the status alone is to be considered, it is apparent that the last quoted sentence should be construed to mean that where the status of employer and employee is localized outside the state and the injury occurred ■ outside the state, the last sentence of Sec. 42-1-52 would apply. It will be noted that by making use of the possessive, the statute is clear that the claimant must resort in such case to the courts and not to the Commission, to enforce his rights, for in such case we have true extraterritoriality. The word "status" is used and not "hired," indicating that the court considered not the inception of the contract but the relationship ensuing from the inception, as the important thing.

We hold that in all situations our Workmen's Compensation Act is intended to be "operative by virtue of the status of employer and employee, and not upon the theory of contract, express or implied, between the employer and employee." *Buckingham Transportation Co.* v. ■ *Ind. Comm.*, supra; *Chandler* v. *Ind. Comm.*, 55 Utah 213, 184 P. 1020, 8 A. L. R. 930; *Cudahy Packing Co.* v. *Parramore*, 263 U. S. 418, 44 S. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532. This conclusion is also supported in decisions which consider the basic theory behind the enactment of such acts. *Pickering* v. *Ind. Comm.*, 59 Utah 35, 201 P. 1029; *Scranton Leasing Co.* v. *Ind. Comm.*, 51 Utah 368, 170 P. 976; *American Fuel Co.* v. *Ind. Comm.*, 55 Utah 483, 187 P. 633, 8 A. L. R. 1342.

It follows from the reasoning in these cases that if the relationship is maintained in this state, our Commission has

jurisdiction to make an award. The status itself, and not the place of origin thereof, determines jurisdiction. Having jurisdiction, the award may be made under our act, "even though such injury was received outside of this state."

To hold that the place where the contract is made is controlling if the injury occur outside the state, or at any time for that matter, would be to nullify the reasoning on which claims have been allowed for injuries within the state. We should then have to hold, contrary to the decision in the Buckingham case, that the act *may* depend for its operation on the place where the contract was made. The confusion and absurdities which would arise under such a holding are readily apparent: In cases involving a position such as that of traveling salesman for a company operating in several states, the administration and effectiveness of such acts might be seriously impeded. Liability for injuries, except those incurred in the course of employment within the state could be escaped by the simple means of placing the machinery of hiring in motion outside of the state. Where a workman, continuously employed, had been assigned to duties in several states, it might be necessary to examine the nature of the contract and its modifications made in every state in which he had worked. The facts of each new assignment of duties would have to be studied to determine if at any time there was a new hiring, or if the changes in duties involved merely unsubstantial modifications of the original contract of hire. By virtue of the fact that many large companies require home office acceptance of employment contracts negotiated by branch offices, we should find it necessary, if it were determined that the place of approval was the place of the making of the contract, to look to the New York act for employees of all such companies having head offices in New York, despite the fact that most of such employees may never reside or work in that state.

If we look to the original contract of employment rather than the employment status (and we must do this in all

cases if in any), the Commission may then be confronted with difficulties in situations where the contract was executed in this state and the injury occurred outside the state. As an example a workman is employed in Utah and later transferred to California where his employment takes him into various sections of California and Oregon. He works ten years at his new duties with no interruption in his employment and is then injured in Oregon. For the past ten years his employer paid premiums in California under the act of that state. At no time in the last ten years was he in Utah in the course of his employment. If we must give the act the narrow construction which makes the place of execution of the contract of hire controlling, we should have to give it that construction in this case since this workman was hired in Utah originally, and was injured outside this state. Nevertheless, it cannot be conceived that an award under the Utah act would be made, the employee status not having been maintained within this state for ten years. Moreover, out of what fund would it be paid? The employer may not even reside here, let alone have a reachable insurance carrier in this state.

Hence, we recognize that the phrase "hired in this state" can only be construed, as used in this act, to mean the equivalent of the "status of employer and employee maintained in this state," just as we recognize a status of being married arising from a contract of marriage. The "hiring" is a continuing operation. The effect of this is to simplify administration by the Commission and insure the state the greatest benefits therefrom. Adherence by employers is thereby simplified and assured, in that in all cases, as here, premiums would be paid in the state where the employment is maintained rather than resorting to a precarious attempt to diagnose the contractual nature of each change of duties.

In support of our position, cases are cited from Minnesota and Wisconsin, states whose acts, at the time of such decisions, were elective rather than compulsory as in Utah.

Since some of the cases involve facts where the original contracts of hire were made outside of the state and the injuries occurred outside the states whose acts are invoked, they are of interest here particularly as to the language used by the courts in applying their acts. In those states, if the employment originated elsewhere, on an employee's coming into the state to work the applicability of the acts would depend upon writing the compensation provisions into the contract of employment. Where the act is compulsory, its provisions apply automatically when the employee status acquires a situs within the state. In neither case is a new contract of employment necessary. Where the acts are elective, the contract may be modified to include the act of the state into which the status is transferred, possibly just a substitution of the act of the new state for that of the old. Where the acts are compulsory, the contract of hire need only be determined to be in effect.

In *Stansberry* v. *Monitor Stove Co.*, 150 Minn. 1, 183 N. W. 977, 20 A. L. R. 316, we have an employee of an Ohio corporation, working out of a Minnesota branch, traveling for the most part in North Dakota where he was injured. From the facts it is not clear where the contract of hire was executed. The court obviously considered only the place where he was then working. It said:

"Stansberry was employed by the Minneapolis branch and worked under its direction. For purposes of this case the situation is the same as though the head office instead of a branch were located in Minnesota.  *  *  *  The business in which he was engaged was localized in this state, and in such a case, our Compensation Act applies and compensates for injuries in a service incident to its conduct, sustained beyond the borders of the state."

The Wisconsin case of *McKesson-Fuller-Morrisson Co.* v. *Ind. Comm.*, 212 Wis. 507, 250 N. W. 396, 398, involved a traveling salesman who had been hired originally in Minnesota and was in the employ of the concern for 40 years. His headquarters had been in Minnesota until about a year and a half prior to his death, and were thereafter in Wisconsin.

The injury from which he died was incurred in Illinois. In allowing recovery, the Wisconsin court said, citing numerous cases:

"Where the employer under the act engages a person to perform services in this state under a contract of hire, express or implied, *no matter where or when such contract may have been engendered,* such employee is under our act and is entitled to its benefits, and this is so even though he is injured while outside of this state rendering services incidental to his employment within this state. *The place where the contract is made is not controlling.* * * * The controlling and decisive factor is whether he had a status as an employee within this state. * * * The fact overwhelmingly appears, and is not disputed, that deceased was stationed in this state carrying on his employer's business in this state, and his ill-fated trip to Chicago was a mere incident to his employment in this state.

"We can do no more than emphasize what we think plainly appears from the cases above cited, that *in all cases* where compensation is sought under circumstances such as these *the dominant consideration is whether the employee had obtained the status of an employee in this state,* * * *." (Italics added.)

In *Val Blatz Brewing Co.* v. *Gerard,* 201 Wis. 474, 230 N. W. 622, 625, the court used similar reasoning, recognizing that the employee status may be changed from place to place:

"When residents of the state contract for service to be performed outside the state, a constructive status under the Wisconsin Compensation Act is created, which continues until the employee acquires an actual status as an employee in some other state."

In that case the court pointed out, as we do here, that the question involved is not one of giving extraterritorial effect to the act, but one of applying the act to persons who came within its jurisdiction by acquiring and maintaining the employee status within its borders.

We have before us a situation where the status had become localized in Utah. Premiums had been paid on the basis of his employment in this state for 19 months prior to Fay's death. Six years had passed since he was first employed in Ohio and four years since he had been stationed in that locality. We see no basis in

the act for placing him in a category different from his fellow employees in the Salt Lake City branch, merely because they may have entered on duty here, while Fay had started his service elsewhere. His employer properly recognized the applicability of the Utah act. Benefits thereunder should be allowed on account of his death.

The order of the Commission is, therefore, set aside, and the cause remanded for further proceedings in accordance with the views herein expressed.

MOFFAT, C. J., and McDONOUGH and PRATT, JJ., concur.

LARSON, Justice.

I dissent. The case involves the construction of Section 42-1-52, R. S. U. 1933. That section reads:

"If a workman who *has been hired in this state* receives personal injury by accident arising out of or in the course of such employment, he shall be entitled to compensation according to the law of this state, even though such injury was received outside of this state. If a workman who has been hired outside *of this state* is injured while engaged in his employer's business and is entitled to compensation for such injury under the law of the state where he was hired he shall be entitled to enforce his rights against his employer in the courts of this state." (Italics added.)

The case revolves about the interpretation of the phrases, "has been hired in this state," and "has been hired outside of this state." The Commission held that the phrases in question had to do with the place where the parties made and entered into the contract of employment. The prevailing opinion holds that the words refer not to the place where the contract of employment was made but to any place where the employer-employee relationship exists, that is, to any place the employee might be while under the contract of employment,—wherever he is in the status of an employee. Why did the legislature say *has been hired* if it meant *is now employed?* Why use the past tense, indicating a completed act, to describe a present, existing,

and continuing situation? The expression "has been hired" is a terse and exact way of stating that the making of the contract, the hiring, is a past, a completed act, initiating an employment that is presently continuing. If "hired" means "in the status of an employee," the statute would in effect say "If a workman who *has been in the status of an employee* in this state," thereby clearly implying that he *is not in such status* at the time of the injury. I cannot ascribe to the legislature the parenthood of such jargon.

No contract of employment was ever made by or with Fay in the State of Utah. The Commission so found, and the finding is amply supported by the evidence and the authorities. *Benguet Consol. Min. Co.* v. *Industrial Comm.*, 36 Cal. App. 2d 158, 97 P. 2d 267; *Selser* v. *Bragmans Bluff Lumber Co.*, La. App., 146 So. 690; *Pettiti* v. *T. J. Pardy Const. Co.*, 103 Conn. 101, 130 A. 70; *Magnolia Compress & Warehouse Co.* v. *Davidson*, Tex. Civ. App., 38 S. W. 2d 634; *Texas Employers' Ins. Ass'n* v. *Volek*, Tex. Com. App., 69 S. W. 2d 33; *Sims* v. *Truscon Steel Co.*, 343 Mo. 1216, 126 S. W. 2d 204; *Adams* v. *Continental Life Ins. Co.*, 340 Mo. 417, 101 S. W. 2d 75.

Since Fay was injured and killed outside this state, and his contract of employment was entered into outside this state, the Commission found he was not hired in this state and denied compensation. The widow brings certiorari, contending that the words "hired in this state," should be construed to mean, "was in the status of an employee when in this state," and therefore the injury or death was compensable in this state regardless of where the injury or death occurred, and presents the one question: What is the meaning of the phrase "hired in this state" as used in the section of the statute quoted above?

Ordinarily state statutes have no force or effect beyond the state boundaries. Story, Conflict of Laws, 8th Ed., paragraphs 7, 22. And though the state may have the right to legislate concerning the rights and obligations of its citizens beyond its own boundaries, the presumption is that it did not intend to give its laws extraterritorial effect.

So, state laws will not be given such effect unless such intention on the part of the legislature is clearly evident from the law itself, or from its purpose or history. *Kennerson* v. *Thames Towboat Co.*, 89 Conn. 367, 94 A. 372, 373, L. R. A. 1918A, 436; Gould's Case, 215 Mass. 480, 102 N. E. 693; Ann. Cas. 1914D, 372. I find nothing in our Compensation Act which indicates any intent that it should have extraterritorial effect apart from the ection here under consideration. And the legislature evidently was aware of that fact, and wrote into the Act Section 42-1-52, R. S. U. 1933, as its declaration with respect to the circumstances and conditions under which such act should have extraterritorial effect. In Section 42-1-57, R. S. U. 1933, it is declared that "the right to recover compensation * * * for injuries sustained by an employee * * * shall be the exclusive remedy * * * except as * * * otherwise declared" in the act. Each state has the right to fix the conditions under which liability shall exist for injuries sustained within its boundaries, and that right cannot be affected by the laws of another state or the fact that either party may be a resident of another state. And when the legislature provided a liability for industrial accidents, which liability was exclusive and in lieu of all other remedies, it cannot be assumed that it intended to apply its laws to accidents occurring outside its own boundaries unless such is expressed or clearly to be inferred from the language used. Our legislature therefore clearly noted three instances which were exceptions to the statutory liability and remedy, to wit: injuries resulting from employer's wilful misconduct, Section 42-1-57; injuries to employee of non-complying employer, Section 42-1-54; and injuries occurring without the state, Section 42-1-52.

There are four possible situations which can arise with reference to employment and state boundaries. (a) Where a contract of employment is made in the state and the employee is injured in the state; (b) where the contract of employment is made in the state and the employee is injured outside of the state; (c) where the contract of em-

ployment is made outside the state and the employee is injured in the state; (d) where the contract of employment is made outside the state and the employee is injured outside of the state. I have used the words "contract of employment made" instead of the word "hired" to avoid quibbling over the words in dispute until the situation is clearly developed as a background for the determination of the meaning of the word "hired."

Subdivision (a) is concededly within the act. Subdivision (b) is definitely covered by the first sentence of the section under dispute (42-1-52). Subdivision (c) is within the compensation provisions of the act since the injury occurs while the injured party is in the status of an employee within the state. The only remaining situation, (d), is governed by the last sentence of the section under consideration. It has uniformly been held that cases within subdivision (d) above come within the last sentence of the section and are not compensable. We so held in *Buckingham Transportation Co.* v. *Industrial Comm.*, 93 Utah 342, 72 P. 2d 1077, 1084. We there said,

"We think, as did the Arizona Supreme Court in the case of *Ocean Accident and Guaranty Corp.* v. *Industrial Comm.* [32 Ariz. 275, 257 P. 644], in construing a statutory provision practically identical with section 42-1-52, that the last sentence of said section applies only to cases where both the status of employer and employee and the injury arose outside of the state of Utah."

We quoted with approval from the reasoning of the Arizona Court, and we think it equally applicable here,—as follows:

"There are three, and only three, cases in which the question of liability under a Compensation Act might be brought before our tribunals. In the first, the status of employer and employee would arise and the accident occur in this state; in the second, one of those events would occur in this state and one without; while in the third both events would occur out of the state. In the first case, obviously our tribunals recognize our act, and it alone, both as to procedure and benefits. In the second case, since our statute is one regulating the status, if the injury occur in the state our law governs, and under

the first sentence of section 59, supra, if the status of employer and employee arises in Arizona, so far as our tribunals are concerned, it will also govern, even though the accident occur elsewhere. This leaves uncovered by the statute only the third case, viz., when the status arises and the accident occurs both outside the jurisdiction of our forums. Such a situation has been brought before the courts many times and the decisions are varied. Bradbury's Workmen's Compensation Laws (3 Ed.) pp. 95-101, and cases cited.

"Certainly this possibility is covered by the language, 'A workman who has been hired outside of this state is injured while engaged in his employer's business.' It will be urged that the language does not expressly state the place of injury must be outside of the state. This is true, but the construction we have given it will make the act provide one and one only certain and definite compensation for each possible class of cases, while any other view would make the basis of the compensation uncertain and unequal for like injuries arising from like causes contrary to the policy of this state. We therefore hold that the last sentence of section 59, supra, applies only to cases where the status and injury both arise outside of Arizona."

The Colorado Court also has recognized the rule that either the accident or the status of being an employee must arise within the state to enable the Industrial Commission to make an award. In *United States Fidelity & Guaranty Company* v. *Industrial Commission*, 99 Colo. 280, 61 P. 2d 1033, at page 1035, that court said:

"It thus appears that to justify recovery under our law the one essential element is that a substantial portion of the work must be done in this state, but that with this must be combined either an accident in Colorado or a contract in Colorado."

Every state we have been able to find with a statute like the one here involved has held against compensability where neither the contract nor the injury arose within the state.

It is contended that Minnesota and Wisconsin have held contrary to the position here taken. But such is not the case. The compensation statutes of both Wisconsin and Minnesota are elective statutes and not compulsory, as is the Utah statute. The Minnesota court has repeatedly held that recovery is allowed for an injury sustained outside the

state on contracts of employment made within the state because the act, being elective, the contract of employment, express or implied, has by force of law the statutory provision relating to compensation written into the contract where the employer has elected to be under the Act. If he has not, the Compensation Act does not apply. Since the compensation provisions are part of the contract, made in Minnesota, they may be enforced regardless of where the accident occurs. *State ex rel. Chambers* v. *District Court*, 139 Minn. 205, 166 N. W. 185, 3 A. L. R. 1347; *Mathison* v. *Minneapolis St. R. Co.*, 126 Minn. 286, 148 N. W. 71, L. R. A. 1916D, 412, 5 N. C. C. A. 871; *State ex rel Maryland Cas. Co.* v. *District Court*, 140 Minn. 427, 168 N. W. 177; *State ex rel. McCarthy Bros. Co.* v. *District Court*, 141 Minn. 61, 169 N. W. 74. Such too is the holding of the Iowa Court. *Pierce* v. *Bekins Van & Storage Co.*, 185 Iowa 1346, 172 N. W. 191; also New Jersey,—*Deey* v. *Wright & Cobb Lighterage Co.* 36 N. J. Law J. 121; and West Virginia in *Gooding* v. *Ott*, 77 W. Va. 487, 87 S. E. 862, L. R. A. 1916D, 637; Rhode Island likewise, *Grinnell* v. *Wilkinson*, 39 R. I. 447, 98 A. 103, L. R. A. 1917B, 767, Ann. Cas. 1918B, 618. Reliance is placed on *Stansberry* v. *Monitor Stove Co.*, 150 Minn. 1, 183 N. W. 977, 20 A. L. R. 316. The stove company was an Ohio corporation, distributing stoves throughout the Northwest through branch offices at Minneapolis. The court says:

"Stansberry *was employed by the Minneapolis branch* and worked under its direction. For purposes of this case the situation is the same as though the head office instead of a branch were located in Minnesota." (Italics ours.)

Two Wisconsin cases are cited and relied upon. The Wisconsin Act, like that of Minnesota, is elective. *Anderson* v. *Miller Scrap Iron Co.*, 169 Wis. 106, 170 N. W. 275, 171 N. W. 935. But the court held that the elective feature was not the controlling thing in their line of reasoning because there must not only be a contract but work under it in the state. *Val Blatz Brewing Co.* v. *Industrial Comm.*, 201 Wis.

474, 230 N. W. 622, 625, presented only the question as to whether one who in Wisconsin enters into a contract to perform services entirely outside of the state can recover under the Act for injuries outside the state. The answer was in the negative, the court saying:

"The Wisconsin act applies to all cases 'where, at the time of the accident, the employee is performing service growing out of and incidental to his employment.' Subdivision (2) of section 102.03 of the Statutes. *This statute does not distinguish between injuries sustained in Wisconsin and those happening outside of its borders.* The one essential requisite to liability under the Wisconsin Compensation Act is employment under such circumstances as to create the status of employer and employee under the Wisconsin act. That status arises out of the contract of employment, which may be either 'express or implied, oral or written.' Subdivision (4) of section 102.07 of the Statutes. It may be made by express agreement. It may be implied from the performances of service. [Italics added.]

"That status is created when service is performed within the state under a contract of hire, without regard to the question of where the contract was made. Such status may also exist where no service is performed in the state in those cases where both the employer and the employee are residents of the state when the contract is made. The state has such an interest in the welfare and protection of its citizens and of those dependent upon them that it may in the exercise of the police power extend the protection of its Compensation Act to citizens of the state who are injured while performing service outside its boundaries.

"Residents of Wisconsin who make contracts of employment in this state are bound by the terms of the Wisconsin act, because all residents of the state are subject to and bound by its laws. When the state exercises the police power, no principle of law and no constitutional right is violated by attaching to contracts of employment made in the state by residents of Wisconsin the same rights and duties incident to service outside of the state that are lawfully imposed as incident to the performance of service within the boundaries of the commonwealth.

\*　　　\*　　　\*

"Our Workmen's Compensation Act cannot be given extraterritorial effect such as will regulate the rights of citizens of other states who perform service wholly outside of this state, no matter where the contract of employment is made. Each state must be left free to determine how it will care for its employees and their dependents when injuries are sustained in industries conducted within its borders.

"This is the rule that has been adopted in the prior decisions of this court. In both *Anderson* v. *Miller Scrap Iron Co.*, 169 Wis. 106, 170 N. W. 275, 171 N. W. 935, and in *Zurich Ins. Co.* v. *Industrial Comm.*, 193 Wis. 32, 213 N. W. 630, the employees, who were residents of Wisconsin and who had made their contracts of employment in Wisconsin, were awarded compensation for injuries sustained outside the state. In *Wandersee* v. *Industrial Comm.*, 198 Wis. 345, 223 N. W. 837, the employee was denied compensation because he was a resident of Minnesota, who was not subject to the laws of Wisconsin and whose service was to be performed outside of the state."

The prevailing opinion quotes from the case of *McKesson-Fuller-Morrison Co.* v. *Industrial Comm.*, 212 Wis. 507, 250 N. W. 396, 398. That case does not help plaintiff here. Plaintiff in that case was regularly and fully employed in Wisconsin. All his territory and employment was in Wisconsin. His employer called him to Chicago on a special mission, in connection with the work he was doing in Wisconsin, and while on that trip he was injured in Illinois. The court says:

"The act overwhelmingly appears, and is not disputed, that deceased was stationed in this state *carrying on his employers business in this state,* and that his ill-fated trip to Chicago was *a mere incident* to his employment in this state." (Italics added.)

The Utah Act is not elective but compulsory. It abolished the old relationship of master and servant and the rights founded thereon in matters involving industrial accidents, and substituted in lieu thereof new employer-employee relationship rights founded upon, fixed and controlled by the statute. Such rights are therefore in no sense contractual rights, that is, they do not grow out of the contract of employment under the law of contract, but are imposed on the parties in regard to industrial accidents within the state by virtue of an employer-employee relationship or status. Industrial accidents occurring outside the state are controlled by the provisions of the section here under discussion. Bear in mind that neither Wisconsin nor Minnesota has any provision in their act as we have in Section 42-1-52, R. S. U. 1933, dealing with accidents occurring outside the

state. It is our function to apply the law as written by the legislature, barring constitutional questions, and not to legislate because we think the law should be otherwise.

With the foregoing background, does the phrase "hired in this state" refer to the inception of the employer-employee relationship or to the status or existence of that relationship? The words "hire" and "hired" are used in other sections of the act, and we may well look to them for light on the sense in which the legislature used the words in this section. In Section 42-1-40, employer is defined as,

> "Every person * * * having in service three or more workmen * * * employed * * * under any contract of hire * * * oral or written, * * *."

Does it make sense to interpret the word *hire* here to mean "status" or "status or an employee-employer relationship"? In the next section, employee is defined as

> "Every elective and appointive officer * * * of the state * * * or of any * * * board of education * * *, or under any contract of hire * * * written or oral."

And again,

> "Every * * * person * * * in service of [an employer] * * * under any contract of hire, * * * written or oral."

Can one conceive of the legislature speaking of "relationship" or "status" being oral or written? The contract creating the relationship may be "oral or written, express or implied" but hardly the status or relationship.

Now turning to the section involved, (42-1-52, R. S. U. 1933), why speak of *hired* in this state when the injury is received outside of this state, if *hired* means the "status of employee"? The statute would then say where one who is in the status of an employee in this state, is injured in such employment [which must be employment having him in the status of an employee in this state], he shall be entitled to compensation for an injury received in employment outside of this state. It just doesn't make sense. But tak-

ing the view that *hired* refers to the contract of employment then the section is clear. It deals with the rights given in this state to workmen injured outside of this state. If his contract of employment was made in this state he may claim compensation for an injury incurred outside the state. When, however, his injury occurred outside the state and his contract had its inception outside the state there was nothing to which the law of this state could attach for compensation. And since our act provided, as quoted supra, that the compensation provisions were the sole remedy for industrial accidents, the legislature wanted to make it clear that such exclusive remedy was confined to its own borders and to accidents within its territorial limits. It therefore declared that the courts of the state were open to persons hired and injured outside the state for enforcement of the rights given them by the law of the state where they were hired. Such right to resort to the courts is a matter of established comity between sovereigns, as well as a constitutional guarantee.

The phrase here involved was construed by this court in *Pickering* v. *Industrial Comm.*, 59 Utah 35, 201 P. 1029, 1030, where we said that "not only was he hired in this state, but he was * * * employed in a business or enterprise being conducted in [the state]." If *hired* means *status of an employee,* it is meaningless to say that *"not only was he in the status of an employee, but he was employed,"* in a business conducted in this state.

It is evident the Commission correctly interpreted and construed the statute and its order denying an award should be affirmed.